1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   AZHAR LAL,

11              Plaintiff,              No. CIV S-07-2060 GEB EFB P

12        vs.

13   T. FELKER, et. al.,

14              Defendants.              <u>ORDER</u>

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  On February 11, 2010, the court ordered defendants' counsel to inquire with the

18   Department of Corrections and Rehabilitation to ascertain the whereabouts of defendants Barter,

19   Cooper, and Florez, and to produce certain documents responsive to plaintiff's discovery

20   requests or prepare a privilege log for withheld documents and submit them to the court for *in*

21   *camera* review.  Defendants have complied with that order and have filed the allegedly

22   privileged documents under seal for in camera review.  *See* Dckt. No. 87, 91, 92.

23        Also pending are plaintiff's motions for appointment of counsel, for sanctions, and for

24   filing and serving pleadings.  *See* dckt. Nos. 89, 99, 100.  He has also filed documents titled

25   "notice of submission of pleading" and "case status."  Dckt. Nos. 102, 107.  Defendants have

26   opposed his motions.  Dckt. Nos. 93, 105.

1

## I.      Allegedly Privileged Documents

Defendants have submitted eleven sets of documents that they claim are privileged[1] in response to the court's February 11, 2010 order, as well as a privilege log and declarations from a CDCR inmate appeals coordinator and a CDCR staff services manager.

Defendants argue that they do not have to provide plaintiff with any of the documents because they are protected by the official information privilege.  Federal common law recognizes a qualified privilege for official information.  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990).  Personnel files of government employees are considered official information. *Id.*  To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages.  *Id.* at 1033-34.  That is, the privilege should ensure disclosure of discoverable information without compromising the state's interest in protecting the privacy of law enforcement officials and in ensuring the efficacy of its law enforcement system.  *Kelly v. City of San Jose*, 114 F.R.D. 653, 662-63 (N.D. Cal. 1987).  "In the context of civil rights suits against [corrections officials], this balancing approach should be 'moderately pre-weighted in favor of disclosure.'"  *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting *Kelly*, 114 F.R.D. at 661).

Because "privileges operate in derogation of the truth finding process the law places the burden of proving all elements essential to invoking any privilege on the party seeking its benefits."  *Kelly*, 114 F.R.D. at 662; Fed. R. Civ. P. 26(b)(5).

The court has reviewed the submitted documents and finds that the following sets of documents should be provided to plaintiff:  Staff complaint package, Log No. HDSP 05-349, and staff complaint package, Log No. HDSP-06-568.  These documents detail inmates' claims against MTA Callison for his alleged failure to provide inmates their insulin injections in a proper manner.  This is exactly plaintiff's claim against MTA Callison in this case.  The

---

[1]Defendants have provided both redacted and unredacted versions of these documents.

information revealed by the documents may be highly probative as to MTA Callison's motive,

intent, plan, or absence of mistake or accident regarding the facts alleged in this case.  The

documents may also lead to admissible evidence that may be used to challenge MTA Callison's

credibility.

Defendants have submitted a declaration attesting to the harm that the disclosure of the

documents would cause.[2]  T. Robertson, the Inmate Appeals Coordinator at High Desert State

Prison, declares that prisoners who provided information regarding the staff complaints might be

at risk of physical harm if the documents were disclosed, as they might have provided

information adverse to the complaining prisoner's interests.  He declares that disclosure of

confidential medical information could be detrimental to the prisoners' health and medical

treatment.  Finally, he states that disclosure of policies regarding pepper spray would allow

inmates to defeat the use of pepper spray to control violence and disruptive behavior.  None of

these concerns weigh heavily against the release of the records listed above.  These records do

not contain any interviews with non-complaining inmates or concern pepper spray.  Defendants

do not explain how the disclosure of these inmates' medical information–that they have diabetes,

and that one of them uses a wheelchair–is detrimental to their treatment.  Thus, defendants have

not identified any specific harms that will result from the release of these particular documents.

Defendants make several additional arguments against the production of the records.

They argue that as none of the staff complaints were sustained, they are not reasonably

calculated to lead to the discovery of admissible evidence.  Defendants have cited no controlling

authorities on this point, nor is it persuasive.  Prison officials may or may not adequately

investigate or accurately sustain inmate complaints against correctional officers.  The court

declines to adopt a blanket policy of deferring to the judgment of prison officials regarding the

---

[2] Defendants have also submitted another declaration regarding the eleventh set of documents, the letter of instruction to MTA Cullison.  As the court finds that this letter need not be disclosed, it does not address this declaration.

truthfulness of inmates' complaints.  The complaints against Callison may lead to the discovery

of admissible evidence even though they were not sustained.

Defendants also argue that because some of the documents contain medical records,

HIPAA requires a protective order before health care information of persons who are not parties

to the litigation are disclosed.[3]  But the statute expressly provides that health information may be

disclosed in a judicial proceeding in response to a court order.  45 C.F.R. 164.512(e)(1)(I).  This

order for production satisfies that requirement.

The other nine sets of documents include complaints against MTA Callison for failing to

medically treat an inmate who had been pepper sprayed; for failure to provide proper care to an

inmate for seizures; for performing an unclothed body search of an inmate; for preventing a

nurse from passing out medication and for putting a booger on an inmate's cell window; and for

making racial slurs, tampering with food, and assaulting an inmate; and complaints against MTA

Cullison for yelling racial slurs, for being rude and throwing an inmate's medications on the

floor, and for making sexual advances towards an inmate.  The final document is a confidential

letter of instruction to MTA Cullison regarding empty oxygen canisters and incomplete

inventory of a van.  After reviewing these documents and applying the balancing test, the court

finds that these documents need not be produced to plaintiff.  Although it is possible that these

documents might lead to the discovery of admissible evidence, the claims at issue in these

complaints are different from the claims in plaintiff's action here and the documents are

therefore less probative in this lawsuit.

Accordingly, defendants are ordered to provide to plaintiff copies of staff complaint

package, Log No. HDSP 05-349, and staff complaint package, Log No. HDSP-06-568 within

seven days of the date of this order.

////

---

[3] Although defendants may properly seek such an order, they have not filed a motion for a protective order.

## II.     Plaintiff's Motions

Plaintiff asks that the court appoint counsel to conduct discovery in this case.  District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases. *Mallard v. United States Dist. Court*, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request counsel voluntarily to represent such a plaintiff.  28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  The court finds that there are no exceptional circumstances in this case. Plaintiff's request is denied.

Plaintiff also asks that the court compel defendants to give him defendant Florez' social security number.  On February 10, 2010, the court ordered defendants' counsel to query CDCR to obtain information regarding the whereabouts of several defendants.  Defendants' counsel complied with this order.  With respect to defendant Florez, defendants stated that he is no longer employed by CDCR, that they do not have a business address for him, and that mail sent to his last-known residential address was returned.  Plaintiff now asks that the court compel defendants to give him defendant Florez' social security number.  Defendants argue that this information is not in their custody or control, and that the number is confidential and not subject to disclosure to them.

Although plaintiff did not originally request Florez' social security number through discovery, plaintiff's goal to get information needed to complete service is apparent from his request.  This case was filed more than three years ago, and service has still not been effected on several defendants.  Accordingly, the court orders defendants to show cause within 14 days why defendant Florez should not be served by publication.  Defense counsel should feel free to contact defendant Florez, if counsel is able to do so, to determine whether he will authorize defense counsel to accept service on his behalf.

Plaintiff further requests that defendants be compelled to give him a copy of the third watch roster for Facility D medical clinic for the time of the incidents that are the subject of his

1   complaint so that he can identify the title of defendant Cooper, whom he has been unable to

2   serve.  Defendants claim that they have now provided records with the names of each MTA and

3   the days that they worked during the relevant time period.  However, plaintiff claims that

4   defendants have redacted information on the roster so that only one employee name out of three

5   is visible on each record.  Plaintiff states that he now believes that defendant Cooper may not be

6   an MTA but a nurse.  Defendants reply that they have provided the information that the court

7   ordered, which was limited to names of MTAs.  Although plaintiff's discovery request was

8   limited to the names of MTAs, again, plaintiff's goal to get information needed to complete

9   service is apparent from the request.  In the interests of justice and judicial economy, the court

10  orders defendants to provide the information requested, that is, an unredacted copy of the third

11  watch roster for Facility D medical clinic for the time of the incidents in question.

12          Plaintiff states that he has learned though defendants' discovery responses that defendant

13  Barter is actually "C. Bartor."  Dckt. No. 99 at 3.  He asks that he be allowed to serve this

14  defendant.  *Id.*  Defendants respond that plaintiff has misread the handwritten signature, and that

15  the employee's name is "C. Barton," but do not oppose plaintiff's request to serve the defendant.

16  Dckt. No. 105 at 3.  Accordingly, plaintiff's request to serve this defendant is granted.  Although

17  Local Rule 220 requires that every pleading to which an amendment is permitted shall be

18  retyped and filed so that it is complete in itself, the court excuses plaintiff from this requirement

19  in the interests of judicial economy.  The Clerk will send plaintiff service documents, and the

20  action will proceed on the May 5, 2008 amended complaint, with the understanding that the

21  defendant previously identified as "Barter" is actually named Barton.  *See* Dckt. No. 14 at 5.

22          Plaintiff further states that defendants responded to his document requests for medical

23  policies and procedures by saying that the documents were available for inspection and copying

24  on request to the litigation coordinator at his prison.  Dckt. 99 at 5-6.  He states that on May 12,

25  May 13, and May 14, he was summoned to the library to inspect the documents.  On the last day,

26  plaintiff asked to copy the documents, but the librarian, Nappi, told him that the litigation

1   coordinator, Young, had limited the number of copies to 20 pages.  Plaintiff filed an internal

2   appeal.  He was then again summoned to the library and Nappi told plaintiff that he was now

3   allowed 100 pages of copies.  He accepted all of the copies that were provided, but states that

4   "the documents that were provided are not adequate." *Id.* at 6.  Nappi called plaintiff into his

5   office and asked him sign a document attesting that he had been afforded adequate time and

6   resources to review the documents at issue, which he refused to sign. *Id.* at 7.  He requests that

7   he be provided copies of the documents at issue. *Id.*

8        Additionally, plaintiff states that defendants responded to another document request by

9   listing a number of court cases in which they were named as defendants, and stating that "copies

10  of complaints or court documents regarding the claims at issue in those cases are available for

11  inspection and copying" at the prison. *Id.*, Ex. D at 3-4.  He claims that he requested copies of

12  the documents, but did not receive them. *Id.* at 8.  Further, he requested a copy of his central file

13  and copies of all of his internal appeals at High Desert State Prison, but did not receive those

14  either. *Id.* at 8-9.  Plaintiff has attached copies of his requests for all of these items.

15       Defendants respond that they were not ordered to provide the documents at issue to

16  plaintiff, and that he can review his central and medical files on request and obtain copies at his

17  own expense. Dckt. No. 105 at 4-5.  They state that "[t]here is no record that Lal has made such

18  a request since his arrival at CSP-Sacramento." *Id.* at 5.  Defendants argue that they should not

19  be required to pay for his copies. *Id.*  Defendants have attached a declaration by litigation

20  coordinator Young stating that she was told by the law librarian that plaintiff came to the library

21  to review "documents provided in response to discovery requests and court orders" on six days

22  for a total of 12.75 hours. Dckt. No. 105-1 at 2-3.  She states that plaintiff was told that the

23  prison would provide up to 100 pages of copies without charge, but not a complete copy. *Id.* at

24  3.  She states that plaintiff may request copies of his central and medical files at ten cents a page,

25  but that he has not asked to review them "since arriving at CSP–Sacramento." *Id.*  She further

26  declares that plaintiff has a zero balance in his trust account. *Id.*

1    Plaintiff has also attached a declaration stating that when he was at High Desert State

2    Prison he had three large envelopes containing a copy of his medical file, but after he transferred

3    to CSP-Sac, the envelopes were not returned to him with the rest of his property.  Dckt. No. 99,

4    Ex. G.  Defendants acknowledge plaintiff's complaint but do not suggest a resolution of this

5    issue.  *See* Dckt. No. 105 at 4.

6    Plaintiff seeks sanctions for defendants' conduct, stating "this court should not allow

7    [defendants] to keep taking advantage of plaintiff because of his pro se status as . . . plaintiff

8    cannot receive attorney fees for [defendants' failure to] comply[] with the discovery order."

9    Dckt. No. 99 at 10.  He asks that the court order defendants to make copies of his central and

10   medical files; all of the internal appeals he filed at High Desert State Prison and to the Director

11   of Corrections; copies of the complaints in the § 1983 actions defendants listed in their discovery

12   responses; and copies of the medical policies and procedures which the court has already held he

13   is entitled to.  As plaintiff is indigent, he can not pay for copies of these documents himself.

14   Given that it took plaintiff 12.75 hours to review the documents in question–which he contends

15   do not even include the documents contained in his medical or central file–it seems likely that

16   there may well be more than 100 pages of relevant documents.

17   On February 11, 2010, the court partially granted plaintiff's motion to compel.  Under

18   Fed. R. Civ. P. 37(b), the court may apportion the reasonable expenses for the motion.  In a case

19   where plaintiff had counsel, the court might award plaintiff partial attorney fees for bringing the

20   motion to compel.  As plaintiff proceeds pro se in this action, he has no attorney fees.  However,

21   under Fed. R. Civ. P. 37(c)(1)(C), and in lieu of awarding monetary sanctions for the partial

22   grant of the previous motion to compel, the court orders defendant to provide complete copies of

23   plaintiff's central and medical files; all of the internal appeals he filed at High Desert State

24   Prison and to the Director of Corrections; the complaints in the § 1983 actions defendants listed

25   in their discovery responses; and the medical policies and procedures which the court has already

26   ////

8

1   held he is entitled to.[4]

2         Plaintiff further requests that Nappi, the law librarian, and Young, the litigation

3   coordinator, be joined as defendants in this action for violating his First, Eighth and Fourteenth

4   Amendment rights.  *Id.* at 8.  The Civil Rights Act provides:

5         Every person who, under color of [state law] . . . subjects, or causes to be
          subjected, any citizen of the United States . . . to the deprivation of any rights,
6         privileges, or immunities secured by the Constitution and laws, shall be liable to
          the party injured in an action at law, suit in equity, or other proper proceeding for
7         redress . . . .

8   42 U.S.C. § 1983.  Plaintiff does not explain how Nappi and Young violated his constitutional

9   rights by refusing to let him copy documents without paying for them.  As he has not stated a

10  claim against these defendants, his request to add them as defendants is denied.

11        Finally, plaintiff's motion for filing and serving pleadings states that he filed three

12  documents, and included with each document self-addressed stamped envelopes so that the first

13  page of the document could be stamped "filed" and returned to him.  *See* Dckt. No. 100.  The

14  documents that plaintiff refers to have been filed.[5]

15  **III.    Conclusion**

16        Accordingly, it is hereby ORDERED that:

17        1.  Plaintiff's motion for appointment of counsel is denied;

18  ////

19  ////

20

21        [4] Although defendants contend "[f]ederal courts may not require a party or a third party
22  to bear a prisoner's litigation expenses," the only controlling authority they cite actually does not
    hold or lend substantial support to that proposition.  *See Penk v. Oregon State Bd. Of Higher*
23  *Educ.*, 813 F.2d 458, 468 (9th Cir. 1987) (in class action sex discrimination case where plaintiffs
    obtained databases of employment information through discovery, requiring them to share the
24  cost of correcting the database was not reversible error because "the district court had [no]
    obligation to require the defendant to subsidize the plaintiffs' costs of litigation.").  Regardless,
25  the court is not ordering defendants to bear plaintiff's litigation costs; instead, it awards the copy
    costs against defendants as sanctions under Fed. R. Civ. P. 37(c)(1)(C).

26        [5] Plaintiff asks to be informed what happened to his envelopes.  Unfortunately, the court
    has no information regarding the envelopes.

1    2.  Plaintiff's motion for sanctions is partially granted and partially denied, as explained

2    above;

3    3.  Plaintiff's motion for filing and serving pleadings is denied as moot as the documents

4    have been filed;

5    4.  Defendants are ordered to give copies of staff complaint package, Log No. HDSP 05-

6    349, and staff complaint package, Log No. HDSP-06-568 to plaintiff within seven days of the

7    date of this order;

8    5.  Defendants are ordered to provide plaintiff with an unredacted copy of the third watch

9    roster for Facility D medical clinic for the time of the incidents described in the complaint within

10   seven days of the date of this order;

11   6.  Defendants are ordered to show cause within fourteen days why defendant Florez

12   should not be served by publication;

13   7.  Plaintiff's request to serve defendant Barton is granted.  The Clerk of the court shall

14   send plaintiff a blank summons, one USM-285 form, an instruction sheet, and a copy of the May

15   5, 2008 amended complaint.  Within 21 days of the date of this order, plaintiff shall return the

16   attached Notice of Submission of Documents with the completed summons, the completed

17   USM-285 forms, and two copies of the May 5, 2008 amended complaint. The court will transmit

18   them to the United States Marshal for service of process pursuant to Fed. R. Civ. P. 4. Defendant

19   Barton will be required to respond to plaintiff's allegations within the deadlines stated in Fed. R.

20   Civ. P. 12(a)(1);

21   8.  Within twenty-one days of the date of this order, defendant shall provide plaintiff

22   complete copies of his central and medical files; all of the internal appeals he filed at High

23   Desert State Prison and to the Director of Corrections; the complaints in the § 1983 actions

24   defendants listed in their discovery responses; and the medical policies and procedures which the

25   court has already held plaintiff is entitled to;

26   ////

9.  Plaintiff's request to add Nappi and Young as defendants in this action is denied; and

10.  The Clerk of the court is directed to terminate docket entries 89, 99, and 100.

DATED:  March 2, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AZHAR LAL,

        Plaintiff,                    No. CIV S-07-2060 GEB EFB P

      vs.

T. FELKER, et al.,

        Defendants.           <u>NOTICE OF SUBMISSION OF DOCUMENTS</u>

_____/

      Plaintiff hereby submits the following documents in compliance with the court's order
filed _____:

        <u>  1  </u>        completed summons form

        <u>  1  </u>        completed forms USM-285

        <u>  2  </u>        copies of the May 5, 2008 Amended Complaint

Dated:

                                    _____
                                        Plaintiff