IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AZHAR LAL,

        Plaintiff,               No. 2:07-cv-2060-KJM-EFB P

    vs.

FELKER, et al.,               ORDER AND
                               FINDINGS AND RECOMMENDATIONS

        Defendants.

_____/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, Miller, and Yeager ("defendants") have filed a motion for summary judgment,[1] ECF No. 166, and plaintiff has filed a motion for default judgment against defendant Flores. ECF No. 178. For the reasons explained below, it is recommended that the motion for summary judgment be granted and the motion for default judgment be denied without prejudice.

/////

---

[1] Plaintiff filed an opposition and defendants filed a reply. ECF Nos. 182, 185. Thereafter, plaintiff filed an "opposition" to defendants' reply. ECF No. 186. Because neither the Federal Rules of Civil Procedure nor the court's Local Rules provide for such a filing, and because it was not authorized by the court, it was not considered in resolving defendants' motion.

## I.     Background

This action proceeds on the verified and amended complaint filed May 5, 2008.  ECF No. 14 ("Compl.").  Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and the allegations in the complaint concern events that occurred while plaintiff was housed at High Desert State Prison ("HDSP").  *Id.* ¶¶ 18-19.  It is undisputed that plaintiff has a long history of treatment for Type 2 diabetes mellitus, complicated by management of mental health problems.[2]  *Id.* ¶ 21, ECF No. 166-2, Defs.' Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("DUF") 11-22, 61.

Defendant Miller was a Nurse Practitioner at HDSP.  Compl. ¶ 7.  Defendants Barter, Baltzer, Callison, Carter, Cullison, Flores, Garrison, and Yeager were Medical Technical Assistants ("MTAs") at HDSP.  *Id.* ¶¶ 8-15.[3]  Their alleged duties were to administer prescriptions ordered by plaintiff's doctor.  *Id.*

Plaintiff alleges that as of June 2006, his diabetes treatment plan included a combination of oral medications, a morning blood glucose check and insulin, and an evening blood glucose check, followed by insulin, if necessary.  *Id.* ¶¶ 22, 26 (alleging that additional insulin would be given in the evening only if the "reading was above a 150").  The crux of plaintiff's complaint in this case is that the defendants, acting with deliberate indifference, impeded that treatment regimen and unreasonably placed plaintiff at risk of serious harm.  Plaintiff claims that on multiple occasions over a protracted period of time he was not released for his evening blood glucose check.[4]  Defendants, who are medical providers and not correctional officers, claim that they had no control over or role in determining when to release plaintiff to report for the evening

---

[2] Plaintiff has been diabetic since 1993.  *Id.* ¶ 21.

[3] Defendants submit that these are the correct names of the defendants in this action, a number of whom were misnamed in the amended complaint.  ECF No. 166-1, MSJ, Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at 2 n.1.

[4] Defendants dispute that allegation, but for purposes of this motion the court assumes it to be true.

checks.  They also contend that plaintiff did not go to the clinic on a number of occasions when he was released by correctional officers in his housing unit.

Plaintiff claims that to receive his evening glucose check, "it was mandatory that he be called out to the medical clinic." *Id.* ¶ 23.  As discussed below, whether plaintiff can show a genuine dispute as to whether the defendants acted with deliberate indifference to his need for evening glucose checks turns, in part, upon whether he can produce evidence establishing that they acted or failed to act in a manner that prevented this treatment regimen knowing that the absence of the evening check would put plaintiff at an unreasonable risk of serious harm.

Plaintiff claims that on June 29, 2006, he filed an inmate appeal because defendant Flores failed to call him to the clinic on the evenings of June 28 and 29, meaning that he did not receive his evening glucose checks on those dates. *Id.* ¶¶ 24-25, Ex. A.  On August 13, 2006, plaintiff allegedly filed another inmate appeal, this time claiming that MTA Flores had failed to call him to the clinic on the evenings of August 9, and 10 (again depriving him of glucose checks on those dates), and also charging Flores with falsely documenting that plaintiff had refused his evening treatments. *Id.* ¶ 29, Ex. A.  Plaintiff also complained that the other MTAs had stopped calling him for his evening glucose checks. *Id.*  Prison officials apparently responded to plaintiff's inmate appeals, stating that on various dates, plaintiff had been called to the clinic but either failed to show up or had refused the treatment. *Id.* ¶ 47.  Plaintiff, however, maintains that if he did not get his evening glucose check it was because he was not called to the clinic. *Id.* ¶ 48.  He also claims that if he had refused treatment, there would be a signed "refusal form" in his medical file. *Id.*

Plaintiff alleges that the MTAs failed to call him to the medical clinic for his evening glucose checks, as follows: (1) that Flores failed to call him on June 28 and 29, August 9, 10, 17, 19, and 23, September 9, 16, 19, 28, and 30, and October 3, 4, 6, 7, 11, 12, 19, 20, 21, and 24, 2006; (2) that Callison failed to call him on August 13 and 28, September 3, 4, 11, 18, and 24, and October 22, 2006; (3) that Carter failed to call him on August 20, 2006; (4) that Cullison

1  failed to call him on August 21, and September 1, 2006; (5) that Garrison failed to call him on

2  August 29, 2006; (6) that Barter failed to call him on September 6, 2006; (7) that Baltzer failed

3  to call him on September 10, 2006; and (8) that Yeager failed to call him on September 25, and

4  October 1, 2, 8, 9, 15 and 16, 2006.  *Id.* ¶¶ 24-25, 33.

5         Plaintiff alleges that the MTAs failed to call him on these dates in "reprisal" for

6  plaintiff's filing of the above-referenced inmate appeals.  *Id.* ¶¶ 34, 65.  He further alleges that in

7  doing so, they knowingly exposed plaintiff to "a life or death situation," including risks such as a

8  heart attack, a stroke, or further complications related to his diabetes.  *Id.* ¶ 34; *see also id.* ¶ 56

9  ("each and every time they did not call the plaintiff out for his evening glucose checks they

10  cause[d] deliberate indifference to plaintiff['s] serious medical needs").  Plaintiff claims that

11  because of the MTAs' actions, he now has permanent neuropathy (nerve damage) in his feet and

12  legs, which causes a burning sensation that interferes with his ability to sleep.  *Id.* ¶ 39.  He also

13  claims to require more insulin now.  *Id.* ¶¶ 38-39.

14         On October 25, 2006, plaintiff was allegedly moved into the prison's main hospital.  *Id.*

15  ¶ 36.  Defendant Miller purportedly informed plaintiff of the possibility that a medication

16  plaintiff was taking for his depression could be "causing" his diabetes.[5]  *Id.*  She allegedly

17  ordered that plaintiff be taken off of all medications, including insulin.  *Id.*  The following

18  morning, plaintiff's blood glucose level purportedly exceeded 400 mg/dl, which, plaintiff claims,

19  is dangerously high.[6]  *Id.*  Defendant Miller then allegedly ordered that plaintiff receive an

20  insulin injection that morning and that evening.  *Id.*  Plaintiff claims that Miller's

21  "unprofessional conduct . . . put [his] life in danger."  *Id.*

22

23       [5] Presumably, plaintiff means by this reference to allege that he was informed the

24  depression medication could somehow be elevating his blood sugar levels and impairing the
   management of his diabetes.

25       [6] According to the complaint, by the time plaintiff's blood sugar level was found to be

26  above 400, he had missed evening glucose level checks on 43 separate dates over a four month
   period.  *Id.* ¶¶ 24, 33.

Based on the above allegations, this action proceeds on a First Amendment claim that the MTAs retaliated against plaintiff for filing inmate appeals by failing to call him for his evening blood glucose checks, and that by doing so, they also interfered with his medical treatment in violation of the Eighth Amendment.  This action also proceeds on the claim that defendant Miller interfered with plaintiff's medical treatment in violation of the Eighth Amendment by discontinuing his insulin.  *See* ECF No. 17 (28 U.S.C. § 1915A Screening Order, dated Oct. 28, 2008) at 2.

## II.    Summary Judgment

### A.    Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

1   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

2   party meets its burden with a properly supported motion, the burden then shifts to the opposing

3   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

4   *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes*," 67 F.3d 816, 819 (9th Cir. 1995).

5         A clear focus on where the burden of proof lies as to the factual issue in question is

6   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

7   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

8   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

9   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

10   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

11   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

12   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

13   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

14   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

15   should be entered, after adequate time for discovery and upon motion, against a party who fails

16   to make a showing sufficient to establish the existence of an element essential to that party's

17   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

18   circumstance, summary judgment must be granted, "so long as whatever is before the district

19   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

20   satisfied."  *Id.* at 323.

21         To defeat summary judgment the opposing party must establish a genuine dispute as to a

22   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

23   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

24   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

25   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

26   material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

6

1   opposing party is unable to produce evidence sufficient to establish a required element of its

2   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

3   an essential element of the nonmoving party's case necessarily renders all other facts

4   immaterial."  *Celotex*, 477 U.S. at 322.

5          Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

6   the court must again focus on which party bears the burden of proof on the factual issue in

7   question.  Where the party opposing summary judgment would bear the burden of proof at trial

8   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

9   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

10  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

11  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

12  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

13  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

14  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

15  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

16         The court does not determine witness credibility.  It believes the opposing party's

17  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

18  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

19  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

20  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

21  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

22  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

23  (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational

24  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

25  475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

26  /////

7

1    Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

3    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4    'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

5    be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

6    issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

7    dispute over an issue that is determinative of the outcome of the case.

8    Concurrent with the instant motion, defendants advised plaintiff of the requirements for

9    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 167;

10   *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir.

11   1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409

12   (9th Cir. 1988).

13   **B.    Discussion**

14   Defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, Miller, and Yeager each

15   argue that plaintiff simply cannot show that they were deliberately indifferent to plaintiff's

16   serious medical needs.[7]  They also argue that they are entitled to qualified immunity.[8]  Defs.' P.

17   & A. at 5.  To succeed on his Eighth Amendment claim predicated on the denial of medical care,

18   plaintiff must establish that he had a serious medical need and that the defendant's response to

19   that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

20   *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Plaintiff's serious medical need is undisputed

21   /////

22

23   [7] Despite acknowledging plaintiff's First Amendment retaliation claims in their answers
to the operative complaint, *see* ECF No. 41, ¶ 6; ECF No. 122, ¶ 6; ECF No. 131 ¶ 6, defendants

24   do not address the retaliation claims in their motion.  Accordingly, the court does not address
those claims.

25

26   [8] Because the court finds that defendants are entitled to summary judgment on the merits
of plaintiff's Eighth Amendment claim, it need not address the issue of qualified immunity.

here.[9]  Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*

Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is insufficient, by itself, to establish deliberate indifference.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  Rather, the plaintiff must show that the course chosen by the defendant was medically unacceptable under the circumstances and that the defendant was aware of the risk posed by the chosen course.  *Id.*; *Farmer*, 511 U.S. at 840.  When a prisoner alleges a delay in medical treatment, he must show that the delay caused an injury.  *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Common law negligence claims of malpractice must be differentiated from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment.  In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

---

[9] A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096.

1  1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391

2  F.3d 1051, 1057 (9th Cir. 2004).

3       The court first addresses defendants' motion as it relates to the MTA defendants, and

4  then as it relates to defendant Nurse Practitioner Miller.

5          **1.**    <u>**Defendant MTAs**</u>

6       Plaintiff alleges that the MTAs were deliberately indifferent to his serious medical needs

7  when they failed to call him to the medical clinic for his evening blood glucose checks on

8  numerous occasions from June through October of 2006.  *See generally* Compl.  Defendants

9  Baltzer, Barton, Callison, Carter, Cullison, Garrison, and Yeager argue that they never failed to

10 administer the blood glucose checks as ordered by plaintiff's doctors.  Defs.' P. & A. at 9-16.

11 The dispute centers on whether defendants, or other individuals caused plaintiff to not receive

12 the evening checks and treatments that he needed.

13      While the allegations of 43 missed evening checks of blood sugar levels over this four

14 month period is troubling, even assuming as true plaintiff's allegations that he was not released

15 from his cell for those checks, the defendants' evidence shows that it was the building

16 correctional officers, and not the defendant MTAs, who were responsible for releasing inmates

17 from their cells to the medical clinic.[10] ECF No. 166-16-17 ("McCullough Decl.") ¶ 5.  Medical

18 staff was, however, responsible for informing the building officers which inmates were diabetic

19 and how often each inmate needed to go to the clinic.  *Id.* ¶ 4.  There is no evidence before the

20 court that these defendants failed to carry out this responsibility.  Once the inmate's information

21 was conveyed, it became a standing medical order, meaning that medical staff did not have to

22 call the building officers each day to request that inmates with daily medical needs, such as

23

---

24     [10]  Whether plaintiff was, in fact, released from his housing unit to go to the medical
clinic for those checks or was escorted during lockdowns, but chose not to go, or to not take the
25 full amount of insulin his doctors had ordered because he felt he did not need it, is disputed.
Defendants present evidence that this was the case.  For purposes of this motion, the court
26 assumes as true plaintiff's contention that he was not actually released to go to the clinic.

1   diabetics, be released to the clinic. *Id.* Significantly, inmates with standing medical orders were

2   expected to walk to the medical clinic to receive their treatment when they were released from

3   their cells for the morning and/or evening "pill lines" by the building officers. *Id.* ¶¶ 5-6, 8-9.

4          As noted, plaintiff claims that he was not called for his evening blood glucose checks on

5   43 evenings over a period of four months.[11]  Defendants' evidence shows that during this four

6   month period, the MTAs regularly provided plaintiff with his morning and evening diabetes

7   treatment when he came to the clinic. *See generally* DUF 71-205.  It also shows that on all but

8   two of these evenings, plaintiff had been released to the evening pill line.  DUF 129, 137, 146,

9   149, 151, 152, 154, 158, 173, 176, 183, 189, 190, 196, 197; ECF No. 182-1, PUF CXXIX,

10   CXXXVII, CXLVI, CXLIX, CLI, CLII, CLIV, CLVIII, CLXXIII, CLXXVI, CLXXXIII,

11   CLXXXIX, CXC, CXCVI, CXCVII.  Defendants contend that despite being released to the pill

12   line on these evenings, plaintiff either failed to come to the clinic for his blood glucose check as

13   expected, or otherwise refused to be checked. *See* Defs.' P. & A. at 12-16; DUF 129, 137, 146,

14   149, 151, 152, 154, 158, 173, 176, 183, 189, 190, 196, 197.

15          Defendants admit that on the evenings of September 11 and 18, 2006, there was no

16   evening pill line, and that plaintiff's blood glucose levels were not checked.  DUF 159, 166.

17   While it is not entirely clear from defendants' evidence why there was no evening pill line on

18   September 11, their evidence shows that on September 18, an inmate was stabbed and that pill

19   lines were suspended as a result.  McCullough Decl. ¶ 9(d).  Defendants explain that when the

20   prison was on a modified program, such as a lockdown for safety and security reasons, inmates

21   might have to be escorted to the medical clinic by Search and Escort officers, depending on the

22   /////

---

[11]  As to four of those evenings, however, it is undisputed that  plaintiff's blood glucose
level was actually checked; i.e. August 21 and 28, and October 1 and 22, 2006. *See* DUF 138,
145, 182, 203 (showing that August 21 was the only evening on which additional insulin was
indicated, and therefore, administered); ECF No. 182-1, Pl.'s Opp'n to DUF ("PUF")
CXXXVIII, CXLV, CLXXXII, CCIII.  (In responding to defendants' statement of undisputed
facts, plaintiff used the corresponding Roman numeral.).

1  program modifications that had been put in place.  DUF 68.  In addition, defendants explain that

2  the clinic MTAs did not have the authority to control the work of the escort officers.  *Id.*

3          Plaintiff does not allege in the complaint, and does not now contend in his opposition,

4  that a defendant MTA ever refused to test his blood glucose once he arrived at the clinic.  Rather,

5  his opposition takes issue with the timing of his release from his cell to go to the clinic.  Plaintiff

6  points to evidence showing that on the evenings on which the defendant MTAs did not check his

7  blood glucose, the pill line had not been released until after dinner.  PUF LXVI, LXVII.

8  Plaintiff contends that he should have been released to the clinic prior to dinner because his

9  doctor had ordered that the blood glucose readings be done before meals.  PUF LXVI, LXVII;

10  *see also* ECF No. 166-5-15 ("Barnett Decl.") ¶¶ 57-58 (stating that as of June 12, 2006, "fasting"

11  blood glucose tests had been ordered for plaintiff twice a day), and UHR 318 (July 14, 2006

12  Physician's Order to check plaintiff's fasting blood sugar levels twice a day).  Plaintiff, however,

13  does not produce any evidence showing that the defendant MTAs failed to communicate the

14  doctor's orders for a pre-meal blood sugar test to the building and/or escorting staff, who

15  undisputably, controlled whether and when to release plaintiff from his cell for his daily diabetes

16  treatments.  DUF 66, 68; PUF LXVI, LXVIII.

17          Although defendants admit that there were two evenings on which there was no pill line

18  and no blood glucose check, plaintiff again fails to produce evidence showing that the defendant

19  MTAs are to blame.  Further, plaintiff concedes that during lockdowns, the MTAs did "not have

20  to arrange" for plaintiff's escort to the clinic.  PUF LXVIII, CLIX; *see also* Pl.'s Decl. ¶ 13

21  (explaining that during lockdowns "escorting staff" would usually get plaintiff to the clinic);

22  PUF CXL (arguing that during lockdowns, "those who were suppose[d] to escort [him] to the

23  clinic failed [in] their responsibilities . . . .").  Thus, plaintiff has not shown that through any

24  purposeful act or failure to act, the defendant MTAs prevented plaintiff from being released to

25  the medical clinic for a fasting blood glucose test prior to dinner.  *See Jett*, 439 F.3d at 1096 (to

26  establish deliberate indifference, the prisoner must show "(a) a purposeful act or failure to

1   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference").

2   Though plaintiff claims that there were times that he went to the medical clinic for an evening

3   glucose check prior to dinner, defendants correctly note that plaintiff's dispute in this regard is

4   not material.  ECF No. 185 at 3.  The defendants had no part in determining when plaintiff would

5   be released for the evening checks.  More pointedly, there is simply no evidence before the court

6   that any of these defendants impaired plaintiff's access to needed evening glucose checks or

7   insulin injections.  Rather, the evidence before the court is to the contrary.[12]

8         Plaintiff also suggests that the defendant MTAs were deliberately indifferent to his

9   serious medical needs because they violated a prison policy requiring that they notify a doctor

10   when a patient misses a dose of insulin.  PUF LXVII; Dckt. No. 182-2, Pl.'s Mem. of P. & A. in

11   Opp'n to MSJ ("Pl.'s P. & A."), Ex. D (entitled "California Department of Corrections CDC-

12   128-C Medication Noncompliance Chrono").  The "policy" produced by plaintiff, however, is

13   merely a form that allows a CDCR healthcare provider to note whether an inmate has "refused

14   one dose of insulin," and to refer the inmate to a physician for an "urgent appointment or

15   medication follow-up counseling."  *Id.*  The form does not purport to create a CDCR policy

16   mandating that a doctor's appointment be scheduled when a diabetic inmate refuses one dose of

17   insulin.[13]  Rather, it is merely a pre-printed form that *allows* a healthcare provider to make such a

18   referral.  Thus, plaintiff's production of and reliance on the form does not create a genuine

19   /////

20

---

21       [12] There is also evidence that plaintiff himself, impeded the defendants' attempts to
provide him necessary medical treatment.  At times he quarreled with insulin doses and he

22   admits to "squirting insulin out," when he felt it was too much.  PUF XLIII, 8:2-14.  Although it
is apparent from the record that plaintiff's mental condition complicated the management of his

23   diabetes, there is no evidence that these defendants were deliberately indifferent to plaintiff's
medical needs.

24

25       [13] The court notes that plaintiff's doctor had not ordered that plaintiff actually receive a
dose of insulin every evening.  Instead, the order was to check plaintiff's blood glucose level

26   every evening, and to provide additional insulin according to a sliding scale only if the reading
exceeded 150 mg/dl.  DUF 65, 72.

dispute as to whether any of the defendant MTAs were deliberately indifferent to plaintiff's serious medical needs.

On the evidence before the court, plaintiff has not raised a triable issue of fact as to whether the defendant MTAs violated his constitutional rights by not calling him to the clinic for his evening blood glucose checks.  There is no dispute that plaintiff was regularly released for the evening pill line, at which time he was expected to go the clinic for his blood glucose check, and that he did not have to be called there by an MTA.  Although plaintiff argues that he should have been released to the clinic before dinner, he fails to demonstrate a triable issue as to whether it was the defendant MTAs who were responsible for getting him there let alone for the timing of his arrival, or that his failure to receive any evening blood glucose check was otherwise attributable to the conduct of the MTA defendants.  *See Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

For the reasons stated above, the court finds that there is no triable issue as to whether the defendant MTAs caused plaintiff to miss any of the evening glucose checks as alleged in the complaint.  Accordingly, summary judgment on plaintiff's Eighth Amendment claim must be granted as to defendants Barter, Baltzer, Callison, Carter, Cullison, Garrison, and Yeager.  *See Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant."); *see also McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (an *inadvertent* failure to provide adequate medical care does not create a cause of action under § 1983).

## 2.   **Defendant Nurse Practitioner Miller**

Plaintiff alleges that defendant Miller, a nurse practitioner, was deliberately indifferent to plaintiff's medical needs when she briefly discontinued plaintiff's insulin after plaintiff was

1   admitted to the prison hospital on October 25, 2006.  Defendants contend that Miller is entitled

2   to summary judgment because plaintiff cannot establish deliberate indifference simply by his

3   difference of opinion with Miller's medical judgment and course of treatment.[14]

4        Defendants submit medical records showing that at 12:40 p.m., on October 25, 2006,

5   plaintiff was admitted to the Correctional Treatment Center with hyperglycemia (high blood

6   glucose).  Barnett Decl., UHR 152.  At the treatment center, medical staff closely observed

7   plaintiff, including his blood sugar levels, to determine whether his use of risperidone, an

8   antipsychotic medication, had any impact on his hyperglycemia.  *Id.*, UHR 152, 155-56, 161-62,

9   169, 174, 184-85, 187; *see also* UHR 153 (including doctor's notation that "risperidone clearly

10   will worsen [plaintiff's] glycemic control" and could cause insulin resistance).  The medical

11   records further reflect that plaintiff was not given insulin until 8:00 a.m. on the day after he was

12   admitted to the treatment center.  *Id.*, UHR 160, 174, 185.  Defendant Miller documented

13   plaintiff's baseline blood glucose level prior to the insulin, and then observed his response after

14   the insulin, noting that there was "good control."  *Id.*, UHR 153 (also documenting that

15   plaintiff's baseline blood glucose level prior to insulin was 404 mg/dl).  The records also show

16   that plaintiff's blood was drawn prior to the 8:00 a.m. insulin dose, and that it was sent to the

17   laboratory for numerous tests, including testing of plaintiff's blood glucose levels.  *Id.* UHR 156.

18   161. 166-68, 185.

19        Defendants also submit the declaration of Dr. Bruce Barnett, the Chief Medical Officer

20   for the California Prison Health Care Services, Receiver's Officer of Legal Affairs.  Barnett

21   Decl.  ¶¶ 1-2.  He states that he has reviewed plaintiff's medical records, and explains that the

22   purpose of briefly taking plaintiff off insulin was to get a baseline for the laboratory tests and to

23

---

24        [14] Defendants also move for summary judgment on plaintiff's claim that Miller "denied
his June 22, 2006 grievance complaining that he had not been given additional nourishment for

25   low blood sugars . . . ."  Defs.' P. & A. at 16 (citing Compl. ¶¶ 36-39, 40-42, 59).  However, the
complaint does not include those allegations, and defendants' argument as to that "claim" is not

26   addressed.

1  assess whether the hyperglycemia was related to plaintiff's use of risperidone. *Id.* ¶ 189.  After

2  obtaining that baseline, plaintiff's insulin injections resumed. *Id.*  Barnett explains that while

3  hyperglycemia is naturally a cause for concern, most physicians are not alarmed unless the blood

4  sugar is above 500. *Id.* ¶ 192.  He adds that the concern with hyperglycemia is not the blood

5  sugar level itself, but rather, with associated complications such as ketoacidosis or dehydration.

6  *Id.*  Barnett notes that plaintiff was not experiencing either of these complications when his

7  blood sugar level reached 400 mg/dl.  *Id.*

8         In opposition, plaintiff does not dispute defendants' evidence showing that the purpose of

9  temporarily discontinuing the insulin was to obtain a baseline blood glucose level in a controlled

10  medical setting, in order to evaluate whether plaintiff's use of risperidone could be adversely

11  affecting his diabetes management. *See* PUF CCVI.  Instead, plaintiff explains that "even

12  though I am not a doctor I know I got diabetes so I thought the staff were going to just kill me

13  . . . ." Pl.'s Decl. ¶ 19.  Plaintiff's view that the delay in receiving insulin was "crazy," however,

14  amounts only to a difference of opinion with a treatment decision made by plaintiff's healthcare

15  providers.  It does not create a triable issue as to whether the decision was medically

16  unacceptable under the circumstances or otherwise deliberately indifferent to his medical needs

17  in violation of the Eighth Amendment. *See Jackson*, 90 F. 3d at 332.  Accordingly, summary

18  judgment must also be granted in favor of defendant Nurse Practitioner Miller.

19  **III.**   **The Motion for Default Judgment**

20         Plaintiff seeks a default judgment against defendant Flores on his First and Eighth

21  Amendment claims.  ECF No. 178; *see also* ECF No. 190 ("Motion for Disclosure of Defendant

22  B.G. Flores' Assets"); ECF No. 191 ("Motion for Lien Against B.G. Flores' Assets").  He seeks

23  $100,000 in compensatory damages against and approximately $111,111 in punitive damages.

24  Compl. at 14; ECF No. 145 at 3.  The file suggests that Flores, having failed to return a service

25  waiver, was personally served with the summons and complaint on November 3, 2011.  ECF No.

26  140.  Flores had 21 days from that date – until November 24, 2011 – to file an answer or a

1   motion under Federal Rule of Civil Procedure 12(b).  Fed. R. Civ. P. 12(a)(1)(A)(I), 12(b), 4(d).

2   To date, Flores has done neither.  On August 24, 2012, the court clerk filed an entry of default

3   against Flores.  ECF No. 165.

4       It is within the sound discretion of the district court to grant or deny an application for

5   default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

6   determination, the court considers the following factors:

7       (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
        substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
8       stake in the action, (5) the possibility of a dispute concerning the material facts,
        (6) whether the default was due to excusable neglect, and (7) the strong policy
9       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

10  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, once default is

11  entered, the factual allegations of the complaint are taken as true, except for those allegations

12  relating to damages.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

13  1987) (citations omitted).  However, although well-pleaded allegations in the complaint are

14  admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and

15  claims which are *legally insufficient*, are *not* established by default."  *Cripps v. Life Ins. Co. of N.

16  Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

17      In multi-defendant cases, Federal Rule of Civil Procedure 54(d) provides that "the court

18  may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if

19  the court expressly determines that there is no just reason for delay."  *See also Frow v. De La

20  Vega*, 82 U.S. 552, 554 (1872) ("a final decree on the merits against the defaulting defendant

21  alone, pending the continuance of the cause, would be incongruous and illegal"); *Wordtech Sys.,

22  Inc. v. Integrated Network Solutions Corp.*, No. 2:04-cv-01970-MCE-EFB, 2009 U.S. Dist.

23  LEXIS 93192 (E.D. Cal. Oct. 6, 2009) (observing that the rule from *Frow* "has been extended in

24  cases even if the defendants are not jointly liable, as long as they are similarly situated").

25      Here, Flores and the other eight MTA defendants are similarly situated, given that

26  plaintiff's First and Eighth Amendment claims against them are based upon the same or a closely

17

related set of facts.  Through these findings and recommendations, the court recommends that
defendant MTAs Baltzer, Barton, Callison, Carter, Cullison, Garrison, and Yeager, be granted
summary judgment on plaintiff's Eighth Amendment claims.  The court has not, however,
resolved the First Amendment claims as to any of the MTA defendants.  While plaintiff's First
and Eighth Amendment claims against Flores may or may not be valid, and thus may ultimately
be appropriate for entry of default judgment, the court finds that ruling on the motion at this
stage of the proceedings may end in inconsistent judgments or logically inconsistent results.
Under these circumstances, there is just reason for delay in entering default judgment as to
Flores, who is one of the nine MTA defendants named by plaintiff.  Accordingly, plaintiff's
motion for default judgment (and its related motions) should be denied without prejudice to the
refiling of a motion for default judgment at a more appropriate time.

## IV.    Request for Counsel

Plaintiff requests that the court appoint counsel.  ECF No. 188.  District courts lack
authority to require counsel to represent indigent prisoners in section 1983 cases.  *Mallard v.
United States Dist. Court*, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court
may request an attorney to voluntarily to represent such a plaintiff.  *See* 28 U.S.C. § 1915(e)(1);
*Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332,
1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the
court must consider the likelihood of success on the merits as well as the ability of the plaintiff to
articulate his claims pro se in light of the complexity of the legal issues involved.  *Palmer v.
Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  There are no such exceptional circumstances in this
case.  Accordingly, plaintiff's request for counsel is denied.

## V.    Order and Recommendation

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants may seek leave to file a second dispositive motion addressing plaintiff's
retaliation claims within 21 days of any order adopting the recommendation below.

18

2.  Plaintiff's request for appointment of counsel (ECF No. 188) is denied.

Further, IT IS HEREBY RECOMMENDED that:

1.  Defendant Baltzer, Barton, Callison, Carter, Cullison, Garrison, Miller, and Yeager's motion for summary judgment on plaintiff's Eighth Amendment claims (ECF No. 166) be granted;

2.  This action shall proceed on plaintiff's First Amendment retaliation claims against defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, Miller, and Yeager, and on plaintiff's First and Eighth Amendment claims against defendant Flores; and

3.  Plaintiff's motion for default judgment against defendant Flores (ECF Nos. 178, 190, 191) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 15, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE