UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AZHAR LAL,

        Plaintiff,

   v.

FELKER, et al.,

        Defendants.

No.  2:07-cv-2060-KJM-EFB P

ORDER

I. BACKGROUND

    On September 30, 2013, this court adopted the magistrate judge's findings and recommendations and granted the motion for summary judgment filed by defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, Miller and Yeager on plaintiff's Eighth Amendment claims.[1] ECF No. 200.

    On October 7, 2013, plaintiff filed a motion for reconsideration of this order. ECF No. 201. On October 24, 2013, plaintiff filed a motion to amend the judgment, citing both Rule 54 and Rule 59 of the Federal Rules of Civil Procedure. ECF No. 206. On November 6, 2013, this court denied plaintiff's motions. ECF No. 211.

/////

---

[1] On October 18, 2013, defendants filed a motion for summary judgment on plaintiff's retaliation claims, which remains pending. ECF No. 204.

1

On December 23, 2013 and June 6, 2014, plaintiff filed motions to amend the judgment, again citing Rule 54 and Rule 59 of the Federal Rules of Civil Procedure. ECF Nos. 221, 245. Defendants filed an opposition, ECF No. 229, and plaintiff filed a reply, ECF No. 234.

II. THE MOTIONS FOR RECONSIDERATION

A. Standard

Under Rule 59(e), a party may move to "alter or amend a judgment" within twenty-eight days of the entry of the judgment. Although the Rule does not list specific grounds for such a motion, the Ninth Circuit has said that a Rule 59(e) motion may be granted if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). This court has "wide discretion" when considering such a motion. *Turner v. Burlington Northern Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). The rule provides "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). A party filing a motion for reconsideration should not ask the court "to rethink what the Court has already thought through" simply because of a disagreement with the result of that thought process. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Such a motion "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Mazalin v. Safeway, Inc.*, No. CIV S-10-1445 KJM CMK, 2012 WL 5387704, at *1 (E.D. Cal. Nov. 1, 2012) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

As noted, plaintiff cites to Rule 54 as well as Rule 59 in urging reconsideration. Federal Rule of Civil Procedure 54(b) authorizes courts to revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). The Ninth Circuit has said a motion to amend the judgment "is

a proper vehicle for seeking reconsideration of a summary judgment ruling," *Tripati v. Henman*, 845 F.2d 205, 206 n.1 (9th Cir. 1988) (per curiam), though some district courts in this circuit have found a Rule 54 motion to be proper. *Regents v. Univ. of Calif. v. Bernzomatic*, No. 2:10-CV-1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal. Feb. 11, 2011) (relying on Rule 54 in deciding whether to reconsider the denial of summary judgment). The standards are the same: reconsideration under Rule 54 is appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice. *Cachil Dehe Band of Wintun Indians v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009). Courts rely on Rule 59 cases when discussing the standard for Rule 54 motions. *See, e.g., Drover v. LG Elecs. USA, Inc.*, No. 2:12–CV–510 JCM (VCF), 2013 WL 632103, at *1 (D. Nev. Feb. 19, 2013) (considering a motion to reconsider an interlocutory order and citing, among other things, *School Dist. No. IJ*, *Multnomah Cnty. Or. v. ACandS, Inc.,* 5 F.3d 1255 (9th Cir. 1993), a Rule 59(e) case); *see also Cachil Dehe Band of Wintun Indians*, 649 F. Supp. 2d at 1069 (same).

     B.  Discussion

In the motion filed December 23, 2013, plaintiff claims that evidence he has submitted in opposition to defendants' second summary judgment motion will prove that defendants were "deliberately indifferent to plaintiff's serious medical needs by not providing treatment that was mandated and then defendant Miller attempted to cover up the MTA's misconduct."  ECF No. 221 at 3.  Plaintiff has submitted numerous filings purporting to be responsive to defendants' second summary judgment motion.  *See* ECF Nos. 219, 222, 223, 224, 231, 233, 236, 247, 248.  The court is not required to guess as to which particular document, buried among these filings, plaintiff believes warrants reconsideration of the court's September 30, 2013 order.

In the motion filed June 6, 2014, plaintiff claims that "new" evidence, in the form of a policy entitled "Volume 4: Medical Service, Chapter 5," provides that there was "an array of procedures that the MTAs did not follow and it did not matter whether plaintiff came to the BMU pill line, or if he didn't come to the BMU pill line because it was the MTAs [sic] duty to inform the Clinic Door Officer to locate the plaintiff and he/she also had an array of duties to follow to

3

locate the plaintiff like calling the housing Unit Control Officer, . . . after which the inmate-patient was to be escorted to the clinic . . . ." ECF No. 245 at 1-2 (citing to ECF No. 248-1, Ex. P at 106-113).

The policy submitted by plaintiff is dated May 2012. *See* ECF No. 248-1, Ex. P at 108. The events giving rise to plaintiff's claims, however, took place in 2006. Plaintiff states that he requested the 2006 version of this document in discovery, but was misled by defense counsel into believing that it did not exist, and that he did not know the document existed until recently. ECF No. 234 at 2; Ex. A. He also states that the procedures set forth in the 2012 policy were in effect in 2006, at the time his claims arose. *Id.* at 2.

The court has reviewed plaintiff's new evidence in the form of the Medical Service Policy, and as explained below, finds that nothing therein warrants amendment of the September 30, 2013 order adopting the magistrate judge's findings and recommendations. In resolving defendants' summary judgment motion, the magistrate judge found as follows:

> Plaintiff does not allege in the complaint, and does not now contend in his opposition, that a defendant MTA ever refused to test his blood glucose once he arrived at the clinic. Rather, his opposition takes issue with the *timing of his release from his cell to go to the clinic*. Plaintiff points to evidence showing that on the evenings on which the defendant MTAs did not check his blood glucose, the pill line had not been released until after dinner. Plaintiff contends that he should have been released to the clinic prior to dinner because his doctor had ordered that the blood glucose readings be done before meals. Plaintiff, however, does not produce any evidence showing that the defendant MTAs failed to communicate the doctor's orders for a pre-meal blood sugar test to the building and/or escorting staff, who undisputably, controlled whether and when to release plaintiff from his cell for his daily diabetes treatments.

ECF No. 194 at 12 (emphasis added; citations omitted); s*ee also id.* at 11 (finding that "inmates with standing medical orders were expected to walk to the medical clinic to receive their treatment when they were released from their cells for the morning and/or evening 'pill lines' by the building officers"). Plaintiff's new evidence consists of a policy providing that priority health care ducats be issued to inmates requiring insulin injections or blood glucose monitoring. ECF No. 248-1, Ex. P, § III(A)(1). The policy also provides that a priority health care ducat list be submitted daily to each clinic door officer and that if an inmate who is on the list has not appeared

4

as scheduled, the clinic door officer "shall call the Housing Unit Control Booth Officer." *Id.* § III(D)(1)-(2). It provides that if "the inmate-patient is located, custody staff shall ensure he is escorted to the Clinic. If the inmate-patient is unwilling to cooperate with the escort, the progressive disciplinary process may be initiated." *Id.* § III(D)(9). Nothing in this policy undermines the court's findings that custody staff controlled whether and when to release plaintiff from his cell to the clinic, or that plaintiff had not submitted evidence showing that the defendant MTAs failed to communicate plaintiff's medical orders to custody staff.

    IT IS THEREFORE ORDERED that upon reconsideration, the September 30, 2013 order (ECF No. 200) is CONFIRMED.

DATED: July 8, 2014.

_____
UNITED STATES DISTRICT JUDGE