UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZHAR LAL,<br><br>    Plaintiff,<br><br>    v.<br><br>FELKER, et al.,<br><br>    Defendants. | No. 2:07-cv-2060-KJM-EFB P<br><br>ORDER AND FINDINGS AND <u>RECOMMENDATIONS</u> |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, and Yeager have filed a motion for summary judgment.[1]  ECF No. 204.  Plaintiff filed an opposition and defendants filed a reply.[2]  ECF Nos. 222-23, 225.  Thereafter, plaintiff requested leave to file a surreply to address defendants' contention that he had made various concessions in his opposition brief.  ECF No. 231.  Plaintiff's request is granted, and the court has considered the surreply (ECF No. 232) in resolving defendants' summary judgment motion.  For the reasons explained below, it is recommended that the motion be granted.

---

[1] The other named defendants include Miller and Flores. Miller was previously granted summary judgment as to plaintiff's sole claim against her. ECF No. 200). Flores, who is in default, has filed a motion to set aside default. ECF No. 216. That motion will be addressed in separately issued findings and recommendations.

[2] Along with their reply, defendants submitted a list of various objections to evidence submitted with plaintiff's opposition. ECF No. 226. Those objections are moot, as none of the evidence to which defendants object is material to the resolution of their motion.

1

**I.     Background**

This action proceeds on the verified and amended complaint filed May 5, 2008. ECF No. 14 ("Compl."). Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and the allegations in the complaint concern events that occurred while plaintiff was housed at High Desert State Prison ("HDSP"). *Id.* ¶¶ 18-19.

Plaintiff has a long history of treatment for Type 2 diabetes mellitus, complicated by management of mental health problems. *Id.* ¶ 21; ECF No. 194 at 2. He alleges that as of June 2006, his diabetes treatment plan included an evening blood glucose check, followed by insulin, if necessary. Compl. ¶¶ 22, 26. He claims that to receive his evening glucose check, "it was mandatory that he be called out to the medical clinic." *Id.* ¶ 23. The crux of his complaint is that on multiple occasions over a protracted period of time, he was not called to the clinic for his evening check.[3]

Defendants Barter, Baltzer, Callison, Carter, Cullison, Flores, Garrison, and Yeager were Medical Technical Assistants ("MTAs") at HDSP. *Id.* ¶¶ 8-15. Their alleged duties were to administer prescriptions ordered by plaintiff's doctor. *Id.* Plaintiff claims that on June 29, 2006, he filed an inmate appeal because defendant Flores failed to call him to the clinic on the evenings of June 28 and 29, meaning that he did not receive his evening glucose checks on those dates. *Id.* ¶¶ 24-25, Ex. A. On August 13, 2006, plaintiff allegedly filed another inmate appeal, this time claiming that MTA Flores had failed to call him to the clinic on the evenings of August 9 and 10 (again depriving him of glucose checks on those dates), and also charging Flores with falsely documenting that plaintiff had refused his evening treatments. *Id.* ¶ 29, Ex. A. Plaintiff also complained that the other MTAs had stopped calling him for his evening glucose checks. *Id.* Prison officials apparently responded to plaintiff's inmate appeals, stating that on various dates, plaintiff had been called to the clinic but either failed to show up or had refused the treatment. *Id.*
/////

---

[3] Defendants dispute that allegation, but for purposes of this motion the court assumes it to be true.

¶ 47. Plaintiff, however, maintains that if he did not get his evening glucose check it was because he was not called to the clinic. *Id.* ¶ 48. He also claims that if he had refused treatment, there would be a signed "refusal form" in his medical file. *Id.*

Plaintiff alleges that the MTAs failed to call him to the medical clinic for his evening glucose checks, as follows: (1) that Flores failed to call him on June 28 and 29, August 9, 10, 17, 19, and 23, September 9, 16, 19, 28, and 30, and October 3, 4, 6, 7, 11, 12, 19, 20, 21, and 24, 2006; (2) that Callison failed to call him on August 13 and 28, September 3, 4, 11, 18, and 24, and October 22, 2006; (3) that Carter failed to call him on August 20, 2006; (4) that Cullison failed to call him on August 21, and September 1, 2006; (5) that Garrison failed to call him on August 29, 2006; (6) that Barter failed to call him on September 6, 2006; (7) that Baltzer failed to call him on September 10, 2006; and (8) that Yeager failed to call him on September 25, and October 1, 2, 8, 9, 15 and 16, 2006. *Id.* ¶¶ 24-25, 33. According to plaintiff, the MTAs failed to call him on these dates in "reprisal" for plaintiff having filed the above-referenced inmate appeals. *Id.* ¶¶ 34, 65.

Based on the above allegations, the remaining claim in this action is a First Amendment claim that the MTAs retaliated against plaintiff for filing inmate appeals by failing to call him to the clinic for his evening glucose checks. Defendants Baltzer, Barton, Callison, Carter, Cullison, Garrison, and Yeager ("defendants") were previously granted summary judgment on plaintiff's claim that by doing so, they also interfered with plaintiff's medical treatment in violation of the Eighth Amendment. ECF Nos. 194, 200.

**II.    Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment

motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24. ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Concurrent with the instant motion, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.   Discussion**

    **A.  Plaintiff's Rule 56(d) Request**

After the summary judgment motion was fully briefed and submitted for decision, plaintiff filed a "request for disclosure" pursuant to Federal Rule of Civil Procedure 56(d), claiming he needed additional information in order to file a "supplemental pleading."[4]  ECF No. 233 at 4.  Rule 56(d) permits a party opposing a motion for summary judgment to request an order deferring the time to respond to the motion and permitting that party to conduct additional discovery upon an adequate factual showing.  *See* Fed. R. Civ. P. 56(d).  However, the request must be based upon a showing that further discovery is needed to disclose information necessary to defeat the motion.  *Id.*  (requiring party making such request to show by *affidavit or declaration* that, for *specified reasons*, it cannot present *facts essential* to justify its opposition.).  A Rule 56(d) affidavit must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  A Rule 56(d) affidavit must also identify "some basis for

---

[4] Where a party opposing summary judgment shows that he cannot present facts essential to the opposition, Rule 56(d) allows the court to: (1) defer consideration of the motion, (2) deny the motion, (3) allow time for further discovery, or (4) issue another appropriate order.  Fed. R. Civ. P. 56(d).

6

believing that the information sought actually exists." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009).

The claim at issue in defendants' summary judgment motion is whether the defendants retaliated against plaintiff in 2006.[5]  Plaintiff's Rule 56(d) request is not easily characterized.  It seeks "further discovery that the defendants will not provide because it is also very damaging for them."  ECF No. 233 at 3-4.  More specifically, plaintiff asks for information as to why "medical technical assistants" at High Desert State Prison were later re-categorized as "correctional officers," as well as copies of his most recent medical records.  *Id.* at 4.   Plaintiff fails to show that the information sought is even marginally relevant to opposing defendants' summary judgment motion.  Nor does he identify any "specific facts" that such documents would reveal, or explain "why those facts would preclude summary judgment."  *See Tatum*, 441 F.3d at 1100; Fed. R. Civ. P. 56(d) (requiring party making such request to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.").  For these reasons, plaintiff's Rule 56(d) request is denied.

Plaintiff also filed subsequent motions to amend and/or refile his opposition brief.  ECF Nos. 246, 253.  Those motions are also denied.  The first request appears to be based on plaintiff's mistaken belief that the court limited his filings to only 50-pages.  No such limit was imposed, nor is there any need for plaintiff to re-file any of his pleadings.  *See* ECF Nos. 218, 251.  The second request, filed seven months after his original opposition, seeks to amend his opposition to correct unspecified "mistakes and errors."  Plaintiff had ample time to oppose the motion in the first instance, and there is no basis for allowing the desired amendments.  However, as stated *supra*, the court has granted plaintiff's request as to his surreply, and that additional filing (ECF No. 232) is being considered.

/////

---

[5] To state a viable First Amendment retaliation claim, a prisoner must allege five elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The First Amendment protects a prisoner's right to file prison grievances.  *Id.* at 567.

**B. Defendants' Summary Judgment Motion**

The facts relevant to plaintiff's First Amendment retaliation claim are intertwined with those related to the Eighth Amendment deliberate indifference claim. Like the Eighth Amendment claim, resolution of the First Amendment claim centers on whether it was the defendants who caused plaintiff to not receive the evening checks and treatments that he needed. The court addressed this very issue, at length, in resolving defendants' first summary judgment motion:

> While the allegations of 43 missed evening checks of blood sugar levels over this four month period is troubling, even assuming as true plaintiff's allegations that he was not released from his cell for those checks, the defendants' evidence shows that it was the building correctional officers, and not the defendant MTAs, who were responsible for releasing inmates from their cells to the medical clinic. [FN 10] ECF No. 166-16-17 ("McCullough Decl.") ¶ 5. Medical staff was, however, responsible for informing the building officers which inmates were diabetic and how often each inmate needed to go to the clinic. *Id.* ¶ 4. There is no evidence before the court that these defendants failed to carry out this responsibility. Once the inmate's information was conveyed, it became a standing medical order, meaning that medical staff did not have to call the building officers each day to request that inmates with daily medical needs, such as diabetics, be released to the clinic. *Id.* Significantly, inmates with standing medical orders were expected to walk to the medical clinic to receive their treatment when they were released from their cells for the morning and/or evening "pill lines" by the building officers. *Id.* ¶¶ 5-6, 8-9.
>
> FN 10: Whether plaintiff was, in fact, released from his housing unit to go to the medical clinic for those checks or was escorted during lockdowns, but chose not to go, or to not take the full amount of insulin his doctors had ordered because he felt he did not need it, is disputed. Defendants present evidence that this was the case. For purposes of this motion, the court assumes as true plaintiff's contention that he was not actually released to go to the clinic.
>
> As noted, plaintiff claims that he was not called for his evening blood glucose checks on 43 evenings over a period of four months. [FN 11] Defendants' evidence shows that during this four month period, the MTAs regularly provided plaintiff with his morning and evening diabetes treatment when he came to the clinic. *See generally* DUF 71-205. It also shows that on all but two of these evenings, plaintiff had been released to the evening pill line. DUF 129, 137, 146, 149, 151, 152, 154, 158, 173, 176, 183, 189, 190, 196, 197; ECF No. 182-1, PUF CXXIX, CXXXVII, CXLVI, CXLIX, CLI, CLII, CLIV, CLVIII, CLXXIII, CLXXVI, CLXXXIII, CLXXXIX, CXC, CXCVI, CXCVII.

8

Defendants contend that despite being released to the pill line on these evenings, plaintiff either failed to come to the clinic for his blood glucose check as expected, or otherwise refused to be checked. *See* Defs.' P. & A. at 12-16; DUF 129, 137, 146, 149, 151, 152, 154, 158, 173, 176, 183, 189, 190, 196, 197.

> FN 11: As to four of those evenings, however, it is undisputed that plaintiff's blood glucose level was actually checked; i.e. August 21 and 28, and October 1 and 22, 2006. *See* DUF 138, 145, 182, 203 (showing that August 21 was the only evening on which additional insulin was indicated, and therefore, administered); ECF No. 182-1, Pl.'s Opp'n to DUF ("PUF") CXXXVIII, CXLV, CLXXXII, CCIII. (In responding to defendants' statement of undisputed facts, plaintiff used the corresponding Roman numeral.).

Defendants admit that on the evenings of September 11 and 18, 2006, there was no evening pill line, and that plaintiff's blood glucose levels were not checked. DUF 159, 166. While it is not entirely clear from defendants' evidence why there was no evening pill line on September 11, their evidence shows that on September 18, an inmate was stabbed and that pill lines were suspended as a result. McCullough Decl. ¶ 9(d). Defendants explain that when the prison was on a modified program, such as a lockdown for safety and security reasons, inmates might have to be escorted to the medical clinic by Search and Escort officers, depending on the program modifications that had been put in place. DUF 68. In addition, defendants explain that the clinic MTAs did not have the authority to control the work of the escort officers. *Id.*

Plaintiff does not allege in the complaint, and does not now contend in his opposition, that a defendant MTA ever refused to test his blood glucose once he arrived at the clinic. Rather, his opposition takes issue with the timing of his release from his cell to go to the clinic. Plaintiff points to evidence showing that on the evenings on which the defendant MTAs did not check his blood glucose, the pill line had not been released until after dinner. PUF LXVI, LXVII. Plaintiff contends that he should have been released to the clinic prior to dinner because his doctor had ordered that the blood glucose readings be done before meals. PUF LXVI, LXVII; *see also* ECF No. 166-5-15 ("Barnett Decl.") ¶¶ 57-58 (stating that as of June 12, 2006, "fasting" blood glucose tests had been ordered for plaintiff twice a day), and UHR 318 (July 14, 2006 Physician's Order to check plaintiff's fasting blood sugar levels twice a day). Plaintiff, however, does not produce any evidence showing that the defendant MTAs failed to communicate the doctor's orders for a pre-meal blood sugar test to the building and/or escorting staff, who undisputably, controlled whether and when to release plaintiff from his cell for his daily diabetes treatments. DUF 66, 68; PUF LXVI, LXVIII.

Although defendants admit that there were two evenings on which there was no pill line and no blood glucose check, plaintiff again fails to produce evidence showing that the defendant MTAs are to blame. Further, plaintiff concedes that during lockdowns, the MTAs did "not have to arrange" for plaintiff's escort to the clinic. PUF LXVIII, CLIX; *see also* Pl.'s Decl. ¶ 13

9

(explaining that during lockdowns "escorting staff" would usually get plaintiff to the clinic); PUF CXL (arguing that during lockdowns, "those who were suppose[d] to escort [him] to the clinic failed [in] their responsibilities . . . ."). Thus, plaintiff has not shown that through any purposeful act or failure to act, the defendant MTAs prevented plaintiff from being released to the medical clinic for a fasting blood glucose test prior to dinner. *See Jett*, 439 F.3d at 1096 (to establish deliberate indifference, the prisoner must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference"). Though plaintiff claims that there were times that he went to the medical clinic for an evening glucose check prior to dinner, defendants correctly note that plaintiff's dispute in this regard is not material. ECF No. 185 at 3. The defendants had no part in determining when plaintiff would be released for the evening checks. More pointedly, there is simply no evidence before the court that any of these defendants impaired plaintiff's access to needed evening glucose checks or insulin injections. Rather, the evidence before the court is to the contrary. [FN 12]

> FN 12: There is also evidence that plaintiff himself, impeded the defendants' attempts to provide him necessary medical treatment. At times he quarreled with insulin doses and he admits to "squirting insulin out," when he felt it was too much. PUF XLIII, 8:2-14. Although it is apparent from the record that plaintiff's mental condition complicated the management of his diabetes, there is no evidence that these defendants were deliberately indifferent to plaintiff's medical needs.

\* \* \*

On the evidence before the court, plaintiff has not raised a triable issue of fact as to whether the defendant MTAs violated his constitutional rights by not calling him to the clinic for his evening blood glucose checks. There is no dispute that plaintiff was regularly released for the evening pill line, at which time he was expected to go the clinic for his blood glucose check, and that he did not have to be called there by an MTA. Although plaintiff argues that he should have been released to the clinic before dinner, he fails to demonstrate a triable issue as to whether it was the defendant MTAs who were responsible for getting him there let alone for the timing of his arrival, or that his failure to receive any evening blood glucose check was otherwise attributable to the conduct of the MTA defendants. *See Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

For the reasons stated above, the court finds that there is no triable issue as to whether the defendant MTAs caused plaintiff to miss any of the evening glucose checks as alleged in the complaint. Accordingly, summary judgment on plaintiff's Eighth Amendment claim must be granted as to defendants Barter, Baltzer, Callison, Carter, Cullison, Garrison, and Yeager. *See Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the

claimed injury."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant."); *see also McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (an *inadvertent* failure to provide adequate medical care does not create a cause of action under § 1983).

ECF No. 194 at 10-14.

Defendants contend they are also entitled to summary judgment on plaintiff's retaliation claim because they were not responsible for calling him out for evening blood glucose tests and thus, could not have retaliated against him in this way. Plaintiff opposes defendants' motion, but as explained below, fails to demonstrate the existence of a triable issue as to whether it was the defendants who caused him to miss any of the evening glucose checks as alleged in the complaint. Thus, defendants could not have retaliated against plaintiff in the manner alleged, and summary judgment must be granted in their favor.

To demonstrate that the MTAs were responsible for ensuring that he arrived at the clinic for his evening glucose checks, plaintiff relies on a California Correctional Health Care Services policy referred to as "Volume 4: Medical Service, Chapter 5." ECF No. 223, Ex. P. Plaintiff previously submitted this policy as "new evidence" in support of a motion for reconsideration of the order granting summary judgment on plaintiff's Eighth Amendment claim. The district judge considered the policy and determined that nothing therein warranted amendment of the order, ECF No. 252, explaining as follows:

> Plaintiff's new evidence consists of a policy providing that priority health care ducats be issued to inmates requiring insulin injections or blood glucose monitoring. ECF No. 248-1, Ex. P, § III(A)(1). The policy also provides that a priority health care ducat list be submitted daily to each clinic door officer and that if an inmate who is on the list has not appeared as scheduled, the clinic door officer "shall call the Housing Unit Control Booth Officer." *Id.* § III(D)(1)-(2). It provides that if "the inmate-patient is located, custody staff shall ensure he is escorted to the Clinic. If the inmate-patient is unwilling to cooperate with the escort, the progressive disciplinary process may be initiated." *Id.* § III(D)(9). Nothing in this policy undermines the court's findings that custody staff controlled whether and when to release plaintiff from his cell to the clinic, or that plaintiff had not submitted evidence showing that the defendant MTAs failed to communicate plaintiff's medical orders to custody staff.

ECF No. 252 at 4-5. In his opposition, plaintiff argues that this policy is "crucial" because the

11

clinic door officers "worked in the clinic with the MTA's and regularly escorted inmates to the clinic as well as the plaintiff." ECF No. 223, ¶ 3. Plaintiff speculates that "[i]t could have been the duty of the Clinic Door Officer . . . in relation with the MTA's . . . for calling the Housing Units." *Id.* ¶ 2. Plaintiff's speculation in this regard is not enough to defeat defendants' motion for summary judgment. As stated, nothing in the policy undermines the fact that custody staff controlled whether and when to release plaintiff from his cell to the clinic. Likewise, the policy itself does not demonstrate that any defendant failed to communicate plaintiff's medical orders to custody staff.

Plaintiff's reliance on a separate policy, which includes the broad statement that "[m]edication management is a shared responsibility requiring cooperation between correctional health care and custody staff," is also not enough to defeat defendants' motion for summary judgment. *See* ECF No. 223, Ex. D ("Chapter 11: Medication Management").

Moreover, plaintiff concedes that the control officers, and not the defendant MTAs, were responsible for releasing him to the medical clinic for blood glucose checks and insulin medication. *See* ECF No. 223 ¶ 1 (stating it is true that "it was the duty of the Control Officer to release the BMU pill line 'twice' a day."); *id.* at ¶ 2 (admitting he does not know what "the general rule was" with respect to calling and releasing diabetic inmates). Since plaintiff admits that defendants were not involved in actually releasing him to obtain his medication, he fails to demonstrate any genuine dispute as to a material issue of fact that they retaliated against him in this manner.

Plaintiff, pointing to several other CDCR policies, also argues that the MTAs did not fulfill all of their job duties, including their responsibility to counsel plaintiff if he failed to comply with medical orders, and to document whether plaintiff refused medical treatment or was otherwise non-compliant. *See* ECF No. 222 at 9-10; ECF No. 223 at 10 (¶ 8), 15 (¶ 8), 24 (¶ 51) Ex. D; ECF No. 232 at 4. Plaintiff argues that their failures in this regard show that they "were covering up what they were doing to the plaintiff (because they were lazy and the plaintiff was complaining . . . that they started to retaliate against [him])." ECF No. 223 at 12 (¶ 8). He adds that the defendants' retaliatory motive is the only way to explain why he missed so many evening

1 glucose checks, even after complaining about the issue. ECF No. 223 at 41 (¶ 140); ECF No. 232
2 at 4. While plaintiff plainly takes issue with whether the MTAs fulfilled all of their job duties, his
3 point in this regard does not raise a genuine dispute of material fact as to whether the defendants
4 actually retaliated against plaintiff in the manner alleged.

5 For these reasons, the court finds there is no genuine dispute for trial and defendants'
6 motion for summary judgment must be granted.

7 Accordingly, IT IS HEREBY ORDERED that:

8 1. Plaintiff's request for leave to file a surreply (ECF No. 231) is granted.
9 2. Plaintiff's requests to amend and/or re-file various documents with the court (ECF
10    Nos. 246, 253) are denied.
11 3. Plaintiff's "request for disclosure" pursuant to Rule 56(d) (ECF No. 233) is denied.

12 Further, IT IS HEREBY RECOMMENDED that defendants Baltzer, Barton, Callison,
13 Carter, Cullison, Garrison, and Yeager's motion for summary judgment (ECF No. 204) be
14 granted.

15 These findings and recommendations are submitted to the United States District Judge
16 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
17 after being served with these findings and recommendations, any party may file written
18 objections with the court and serve a copy on all parties. Such a document should be captioned
19 "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections
20 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
21 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
22 DATED: September 30, 2014.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE