1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    AZHAR LAL,                                    No.  2:07-cv-2060-KJM-EFB P

12                     Plaintiff,

13          v.                                      FINDINGS AND RECOMMENDATIONS

14    FELKER, et al.,

15                     Defendants.

16

17          Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in an action

18    brought under 42 U.S.C. § 1983.  He moves for entry of a default judgment against defendant

19    Flores.[1]  ECF No. 214.  Flores, who had not previously appeared in this case, filed an opposition

20    and a related motion to set aside the clerk's entry of his default.  ECF Nos. 216, 217.

21          The entry of Flores' default follows a protracted history of efforts to complete service of

22    process on him.  That history is both convoluted and frustrating.  Analysis of Flores' motion here

23    is informed, in part, by that history.

24          This action was commenced on October 1, 2007.  ECF No. 1.  An amended complaint was

25    filed on November 21, 2007, and a second amended complaint on May 5, 2008.  ECF Nos. 7, 14.

26

27          _____
            [1] Plaintiff originally named the defendant as "Florez."  He learned through discovery that
      the correct spelling is "Flores."  *See* ECF No. 87, ¶ 2.  The spellings are used herein
28    interchangeably.

                                              1

1  The second amended complaint was screened and on October 28, 2008, the court found that for

2  purposes 28 U.S.C. § 1915A, it "stated a cognizable claim that Florez, [and other named

3  defendants] retaliated against plaintiff and . . .  interfered with his medical treatment in violation

4  of the Eighth Amendment."  ECF No. 17 at 2.

5        Plaintiff previously had been granted leave to proceed in forma pauperis.  ECF No. 8 at 5.

6  Therefore, service of the summons and complaint became the responsibility of the U.S. Marshal.

7  The October 28, 2008 order instructed plaintiff to complete and submit a summons and nine

8  USM-285 forms, together with ten copies of the endorsed amended complaint, for use by the

9  Marshal in serving process on the multiple defendants.  ECF No. 17 at 3-4.  However, only two

10  copies of the complaint were subsequently submitted by plaintiff to the court.  Plaintiff explained

11  that the prison law librarian refused to make more copies than two.  Accordingly, on March 9,

12  2009, the court ordered that eight more copies were to be submitted for use by the Marshal to

13  complete service.  ECF No. 31.  Plaintiff then submitted all of the required documents for service

14  and on March 26, 2009, the court ordered the Marshal to proceed with service.  ECF No. 33.   On

15  May 28, 2009, the Marshal filed executed waivers of service for six of the named defendants, but

16  not for Flores.[2]  ECF No. 40.  Deputy Attorney General James Flynn filed an answer to the

17  complaint on behalf of those six defendants on June 5, 2009.[3]  ECF No. 41.

18        As for Flores, the Marshal returned the summons directed to "B. Florez" as unserved with

19  a notation stating that he was no longer employed at High Desert State Prison and could not be

20  identified in the CDC locator database.[4]  ECF No. 63.  For that reason, plaintiff was granted

21  _____

22        [2] In addition to Flores, defendants Barter and Cooper had not been served.  The
    information provided to the Marshal was they could not be found at the institution or in the

23  Department of Correction's locator database.  ECF Nos. 47, 63.

24        [3] Plaintiff subsequently informed the court that he had written to the Attorney General's
    Office and "inquired if they were representing defendant Florez as they may have omitted his

25  name by mistake."  ECF No. 58 at 3.  In a July 27, 2009 response, Deputy Attorney General
    Flynn stated, "I do not know whether Florez has been served, and I have not been asked to

26  represent that defendant."  *Id.,* Ex. D.

27        [4] Specifically, the notation states "Mailed 4/9/9"   "5/11/09 per facility – not employed per

28  CDC locator several –unable to identify."  ECF No. 63.

1   additional time to request from the California Department of Corrections, either through

2   discovery or through the California Public Records Act, the information necessary for the

3   Marshal to complete service of process on Flores.  ECF No. 65.  The order granting additional

4   time instructed that "[i]f plaintiff's access to the required information is denied or unreasonably

5   delayed, plaintiff may seek judicial intervention."  *Id.*

6          Before the court issued that order, plaintiff filed a motion to compel defendants to provide

7   him with further responses to certain discovery requests that might have assisted him in obtaining

8   the information necessary for the Marshal to complete service of process on defendant Flores.

9   ECF No. 61.  Thereafter, plaintiff filed a motion for judicial intervention describing his further

10  attempts to obtain the information necessary for the Marshal to complete service of process on

11  Flores.  *See* ECF No. 73, ¶¶ 2, 7, Ex. A.  Plaintiff's attempts through both the California Public

12  Records Act and through discovery were met with objections to his requests and refusals to

13  provide the information.  *See* ECF No. 79 (order partially granting plaintiff's motion to compel

14  and discussing defendants' objections to plaintiff's discovery requests); ECF No. 73, ¶ 8

15  (plaintiff's declaration that "HDSP Officials deliberately would not provide B. Florez's address or

16  location to serve with process").  Ultimately the court concluded that "despite [plaintiff's]

17  diligence in seeking [Florez's] address[ ], plaintiff has been denied access to that information."

18  EFC No. 79 at 2.  Therefore, the court granted the motion for judicial intervention and ordered

19  defendants' counsel to inquire with the California Department of Corrections and Rehabilitation

20  whether it had contact information for Flores.  *Id.*  The court further ordered that if a good faith

21  records check revealed an appropriate address for service of process then counsel was to promptly

22  inform the Marshal.  The court also instructed that if no such information could be obtained

23  counsel was to inform the court within thirty days.  *Id.*

24         In response, defense counsel disclosed the following:

25             There was no employee named "Florez" who was a medical
               technical assistant in the Facility D Medical Clinic on Third Watch
26             at the times at issue in the complaint.   There was a medical
               technical assistant named "B. G. Flores," and defendants believe
27             that his name is misspelled in the complaint.  Flores is no longer
               employed by CDCR, and defendants have no information on his
28             current business address.  Defendants' attorney was advised that

1
2
3

> mail sent from the prison to Flores at his last known residence address, which was 740 Hall Street, Susanville, CA 96130, was returned as undeliverable in 2009.  CDCR does not have any other record or information as to his current residence address.

4   ECF No. 87, ¶ 1.  Thereafter, in his continuing efforts to obtain information required for the

5   Marshal to complete the task of serving Flores, plaintiff requested a discovery order compelling

6   the production of Flores' Social Security Number.  ECF No. 99.  Appropriately, plaintiff argued

7   that "[w]hile it may be true that Flores may not be employed by CDCR any longer, that does not

8   mean that he no longer exists and his Social Security Number still in fact exists and Respondents

9   Office can thereby locate this Defendant if it wishes to do so, but they not wish to locate this

10  defendant intentionally . . . ." *Id.* at 2.  Defense counsel responded that the "Defendants do not

11  have custody or control of records containing Flores's Social Security number."  ECF No. 105 at

12  2.  Counsel added that assuming that the information is in the custody of the CDCR, it is

13  confidential and not subject to disclosure.  *Id.* at 2-3.

14       Given the resistance to the efforts by plaintiff as well as personnel in the U.S. Marshal's

15  Office to complete service of process (as mandated by the order directing service of process),

16  including objections to plaintiff obtaining the required information through discovery, the court

17  issued an order to show cause "why defendant Florez should not be served by publication."  ECF

18  No. 109, ¶ 6 (Order filed March 4, 2011).  In doing so, the court noted that "[t]his case was filed

19  more than three years ago, and service has still not been effected on several defendants."  *Id.* at 5.

20  The order further instructed that "Defense counsel should feel free to contact defendant Florez, if

21  counsel is able to do so, to determine whether he will authorize defense counsel to accept service

22  on his behalf."  *Id.*

23       Six days later, on March 10, 2011, counsel finally provided the court with information that

24  would enable the Marshal to complete service of process.  ECF Nos. 110, 111.  Counsel informed

25  the court that the defendant's correct name appears to be Bernabe G. Flores, and provided an

26  address and phone number for him.  *Id.*  Counsel added: "[h]owever, defendants' counsel is not

27  authorized to accept service for Flores and will not represent him if service is made."  ECF No.

28  111 at 2.  Counsel stated that he has "provided the Court under seal with what he believes is a

1   current address and telephone number for defendant Flores, and has asked that it be available only

2   to Court personnel and the United States Marshal for service purposes.   Because that information

3   would allow service to be effected with reasonable diligence by means other than publication,

4   defendants do not believe that service by publication is appropriate." *Id.* at 2-3.

5         With that information, the court issued a standard order directing the Clerk to forward

6   instructions for service of process, a completed summons, and copies of the amended complaint

7   to the Marshal for service.   ECF No. 126.   The order directed the Marshal to request that Flores

8   execute and return a waiver of personal service in accordance with Fed. R. Civ. P. 4(d) and 28

9   U.S.C. § 566(c).   *Id.* at 2.   It also instructed that if Flores failed to sign and return the waiver

10   within 60 days the Marshal was to personally serve process on Flores.   *Id.*   Although other

11   defendants did, Flores specifically did not sign and return a waiver of personal service, and on

12   November 3, 2011, the Marshal served the summons and complaint by personal delivery of the

13   documents at Flores' home to his daughter.   ECF No. 140.   Notwithstanding that personal service

14   of process, Flores did not timely file an answer or otherwise respond to the summons and

15   complaint and plaintiff filed motions for default judgment, ECF No. 145, and for the clerk's entry

16   of default.   ECF No. 149.

17         The court denied the motion for default judgment, in part as premature, noting that

18   although "Flores has not appeared, it is unclear whether his default was due to excusable neglect."

19   ECF No. 164 at 4.   The court did, however, grant the request for a clerk's entry of default, *id.* at 5,

20   and on August 24, 2012, the Clerk of the Court entered Flores' default.   ECF No. 165.[5]

21   Thereafter, plaintiff again moved for a default judgment against Flores.   ECF No. 214.   That

22   motion finally captured the attention of Flores and he filed both an opposition and a motion to set

23   aside the Clerk's entry of default.   ECF Nos. 216, 217.   In requesting that his default be set aside,

24   Flores asserts that he mistakenly assumed that the Litigation Coordinator at High Desert State

25   Prison "would automatically provide a defense for him with respect to this matter, along with

26   other Defendants."   ECF No. 216 at 2.   Although the Clerk's entry of default was served on

27   ─────────────────────

[5] The Clerk's entry of default was sent to Flores' home address.

28

1   Flores at his home address on August 24, 2012, his December 5, 2013 motion to set aside his

2   default makes the remarkable assertion that he "promptly filed this Motion once he learned of the

3   existence of the entry of default against him."  ECF No. 216 at 2.  If, in fact, Flores had actual

4   notice that plaintiff was seeking the entry of default and failed to act, there would appear to be

5   little basis for concluding that he has shown "good cause" to set aside that entry.

6        Furthermore, the court is troubled by Deputy Attorney General Flynn's earlier disclaimers

7   that his office did not represent Flores on the one hand, while on the other opposing every attempt

8   by plaintiff to discover the information needed to complete service on Flores.[6]  That lack of

9   congruency makes conspicuous the question not addressed in the brief.  Ultimately, the brief

10  seeking to set aside Flores' default was filed by a California Deputy Attorney General.  But in

11  seeking to set aside the default, the brief fails to acknowledge Deputy Attorney General Flynn's

12  past resistance to discovery needed to serve Flores[7] while denying that Flores was represented by

13  the California Attorney General's Office; nor does it address what, if anything, was done to

14  prevent a default by the persons in that office who received the ECF notification of the motion to

15  enter Flores' default.  Plaintiff's motions for entry of Flores' default (ECF No. 149) and for

16  default judgment (ECF No. 145), and the court's ruling on those motions (ECF No. 164) are

17  clearly seen on the docket, each with an ECF notification receipt showing electronic service on

18  several personnel at the California Attorney General's Office including

19  "constance.jumper@doj.ca.gov, docketingsaccls@doj.ca.gov, ecfcoordinator@doj.ca.gov,

20  francesca.covey@doj.ca.gov, and james.flynn@doj.ca.gov."

21       The court has the discretion to set aside the entry of default "for good cause."  Fed. R.

22  Civ. P. 55(c).  However, the Ninth Circuit treats the standard for good cause to set aside an entry

23

24       [6] Notwithstanding Deputy Attorney General Flynn's previous representation that
    "defendants' counsel is not authorized to accept service for Flores and will not represent him if
25  service is made," ECF No. 111 at 2, Flores' motion to set aside his default and his opposition to a
    default judgment were, in fact, filed by the California Attorney General's Office.
26

27       [7] At one point Flynn raised in a scheduling request the question of whether "claims against
    defendants Farter, Cooper and Florez should be dismissed for failure to effect service."  ECF No.
28  66 at 3.

1   of default under Rule 55(c) the same as the excusable neglect standard for relief from judgment

2   under Rule 60(b)(1).  That rule allows district courts to relieve a party from a judgment or order

3   for reason of "mistake, inadvertence, surprise, or excusable neglect," provided that the party

4   moves for such relief not more than a year after the judgment was entered.  Fed. R. Civ. P.

5   60(b)(1).  Although there is considerable discretion under the rule, the Ninth Circuit has

6   admonished generally that Rule 60(b) is "remedial in nature and . . . must be liberally applied."

7   *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (*per curiam*).  But this does not absolve the

8   defendant here from demonstrating that good cause exists in this case to relieve him of his failure

9   to timely respond to the complaint.

10           There are three factors derived from the "good cause" standard under Rule 55(c) which

11   govern the lifting of entries of default as well as the vacating of a default judgment.  *See TCI*

12   *Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001*), overruled on other grounds*

13   *by Egelhoff v. Egelhoff*, 532 U.S. 141, 121 (2001).  "Those factors are: whether the defendant's

14   culpable conduct led to the default; whether the defendant has a meritorious defense; and whether

15   reopening the default judgment would prejudice the plaintiff."  *Id.*  This tripartite test is

16   "disjunctive," meaning that the district court is free to deny the motion if any of these three

17   factors is shown to exist.  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d

18   1104, 1108-09 (9th Cir. 2000).  It is a "well-established proposition that a finding of culpability

19   on the part of a defaulting defendant is sufficient to justify the district court's exercise of its

20   discretion to deny relief from a default judgment."  *Brandt v. American Bankers Ins. Co. of*

21   *Florida,* 653 F.3d 1108, 1111 (9th Cir. 2011).  Therefore, before turning to the other factors the

22   court first addresses the question of culpable conduct by examining the reason for the default,

23   including whether it was within the reasonable control of the defense, and whether the defendant

24   acted in good faith.

25           As to "culpable conduct," the Ninth Circuit has observed that "a defendant's conduct is

26   culpable if he has received actual or constructive notice of the filing of the action and

27   *intentionally* failed to answer."  *TCI Group Life Ins. Plan,* 244 F.3d at 697 (emphasis in original)

28   (quoting *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988), and citing

1   *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).  In *Pincay v. Andrews,* 389

2   F.3d 853, 855 (9th Cir. 2004) (*en banc*) the Ninth Circuit further noted that the concept of

3   culpable conduct must be viewed in the context of *Pioneer Investment Services Co. v. Brunswick*

4   *Associates Ltd. Partnership*, 507 U.S. 380, 394 (1993), which notes that "for purposes of Rule

5   60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply

6   with a filing deadline is attributable to negligence."  Flores stands on tenuous grounds on this

7   question.  The Supreme Court pointedly observed in *Pioneer Investment Services Co.* that '[t]his

8   leaves of course, the Rule's requirement that the party's neglect of the [filing deadline] be

9   'excusable.'"  *Id.* at 395.  At bottom, this determination is "an equitable one, taking account of all

10   relevant circumstances surrounding the party's omission[,]" including "the danger of prejudice to

11   the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reason

12   for the delay, including whether it was within the reasonable control of the movant, and whether

13   the movant acted in good faith."  *Id.*

14        Here, Flores' declaration states that he first learned of the entry of default on December 2,

15   2013 through the Litigation Coordinator at High Desert State Prison (HDSP), after which Flores

16   spoke with the Deputy Attorney General assigned to the case.[8]  ECF No. 216 at 9, ¶ 5.  The

17   motion to set aside his default does not explain why the Litigation Coordinator did not inform

18   Flores of the motion to enter his default, or otherwise take any action to prevent Flores from

19   defaulting in the first place.  The lack of any such explanation is conspicuous, given the

20   protracted history of resisting access to information the Marshal needed to complete service of

21   process on Flores, who once his correct address was finally obtained, declined to waive such

22   service.

23        The address for Flores was provided on March 10, 2011.  ECF Nos. 110, 111.  The

24   Marshal attempted waiver and acknowledgment of service by mail on June 22, 2011, ECF No

---

26        [8] He does not say when he first learned of the pendency of the action.  Further, as
27   discussed below, he does not address the Marshal's attempt to effect service by mail via written
waiver of service months before the personal delivery of the complaint to his home.  Nor does
28   Flores explain how it is that he was not on notice of the entry of default as early as August 24,
2012, when the Clerk served a copy of the entry of default against him at his home address.

140, but Flores did not sign and return the requested waiver.[9] *Id.*; *see also* ECF No. 141 (Marshal's request for reimbursement, citing Rule 4(d)(2)).  Conspicuously, Flores does not deny receipt of the Marshal's attempt to complete service by mail.  Indeed, his declaration simply ignores the Marshal's notation that mail service was attempted on June 22, 2011 and the request for waiver of personal service was not returned.  He does not disclose whether he inquired with the prison's Litigation Coordinator, the California Attorney General's office, or otherwise took any reasonable steps at that time to protect against a default.  Similarly, he provides no such information once personal service occurred on November 3, 2011.  Instead, Flores states generally in his declaration that he had an understanding based on his training about litigation that he could rely on the Litigation Coordinator to protect his interest and provide him with a defense.[10]  ECF No. 216 at 8-9, ¶ 2.  He specifically "recall[s] signing papers acknowledging that any litigation arising out of [his] employment with the CDCR would be handled by the Litigation Coordinator."  *Id.*  However, he ultimately concedes in his motion that he was mistaken in assuming that the Litigation Coordinator would automatically provide him with a defense, and that he was required to expressly request a defense from CDCR.  ECF No. 216 at 2, 5.

Even assuming that his counsel or the Litigation Coordinator were at fault in causing Flores to fail to respond to the summons and complaint, the Ninth Circuit and other circuits have on multiple occasions addressed the concept of "excusable neglect" in the context of missed filing deadlines resulting from attorney negligence in considering whether good cause excuses a plaintiff's failure to complete service of process within the 120 day deadline of Rule 4(m)

/////

---

[9]  Rule 4(d)(1) imposes "a duty to avoid unnecessary expenses of serving the summons." It permits a plaintiff to notify a defendant by mail that the action has been commenced and to request that the defendant waive service of the summons.  It requires that the request be accompanied by a copy of the complaint, two copies of the waiver form and a prepaid means for returning the form.  The Marshal's notation indicates that such a request was mailed to Flores but not returned.

[10] No declaration is submitted from the Litigation Coordinator or the persons at the California Attorney General's Office, who received electronic notice of the filing of the motion for the entry of Flores' default explaining what steps, if any, were taken to prevent the default.

1   (formerly Rule 4(j)).[11]  In *Wei v. State of Hawaii*, 763 F.2d 370, 371 (9th Cir. 1985) (*per curiam*)

2   counsel's failure to calendar the 120 day deadline was held not to be excusable neglect.  *Id.* at 372

3   ("The inadvertence of Wei's counsel likewise does not qualify as good cause for Wei's failure to

4   comply with Rule 4(j)").  Likewise, in *Townsel v. Contra Costa County, Cal*., 820 F.2d 319, 320

5   (9th Cir. 1987), counsel's unawareness of the existence of Rule 4(j) was not good cause for

6   failure to meet the deadline.  Quoting *Wei,* the court noted that if an attorney's inadvertent failure

7   to calendar the deadline "constitutes 'good cause,' the good cause exception would swallow the

8   rule."  *Id.*

9        The court in *Wei* expressly noted that because the statute of limitations had expired, the

10  result effectively would be a dismissal with prejudice but nonetheless held the litigant

11  accountable for the acts of the attorney.  *Id.* (quoting *Kung v. FOM Investment Corp*., 563 F.2d

12  1316, 1318 (9th Cir. 1977) ("We recognize that Wei may be harmed by his attorney's neglect, but

13  'litigants are bound by the conduct of their attorneys, absent egregious circumstances which are

14  not present here.'")); *see also Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989)

15  (Litigants are "considered to have notice of all facts known to their lawyer-agent" and have a duty

16  to "keep track of the progress of their lawsuit.").  Similarly, reliance upon a third party who

17  negligently allowed a filing deadline to be missed has been rejected as a substitute for due

18  diligence.  "We have previously held that reliance upon a third party or on a process server is an

19  insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient

20  basis for granting an extension of time to effect service."  *Petrucelli v. Bohringer and*

21  *Ratzinger,*46 F.3d 1298, 1307 (3d Cir. 1995) (citing *Braxton v. United States*, 817 F.2d 238, 242

22  (3d Cir. 1987)).

23       Thus, even if the fault for not timely responding to the summons and complaint lies with

24  the Litigation Coordinator, or perhaps the deputy attorney general assigned to the case at the time,

25  no specific facts or circumstances are provided here which demonstrate that their neglect was

26  excusable.  While there is no per se rule against delegation to paralegals, or indeed any per se rule

27

28       [11] The 1990 version of Rule 4(j) allowed for the extension of the 120–day service period
    only upon a showing of good cause.  *In re Sheehan,* 253 F.3d 507, 514 (9th Cir. 2001).

1    involving a missed filing deadline, *see Pincay,* 389 F.3d at 855 (9th Cir. 2004) (en banc), the

2    question nonetheless reduces to whether the neglect, be it by Flores, his counsel or the Litigation

3    Coordinator , or all of them was "excusable." *Pioneer Investment Services Co*., 507 U.S. at 395.

4    The Flores declaration simply does not answer the question.

5         Further, Flores' admission to having received some training as to litigation against him

6    arising from his employment with the prison coupled with the history in this case suggests

7    avoidance rather than inadvertence.[12]  In any event, although Flores attests that he believed any

8    litigation involving him "would be monitored by the Litigation Coordinator at the institution"

9    (ECF No. 216 at 2, ¶ 2) that assumption does not relieve him of his obligation to keep track of the

10    time limit for him to respond to the summons and complaint.  *See Ringgold Corp.*, 880 F.2d at

11    1141.

12         For all of these reasons, the record does not adequately support a finding of excusable

13    neglect.  While there clearly was negligence in not timely responding to the complaint, the Flores

14    declaration provides far too little information as to what actions he, his counsel or the Litigation

15    Coordinator took to assure the he would not default.  His motion and declaration do not address

16    whether he read the instructions in the summons that was both mail served and, months later,

17    personally served on him.  It does not say what instructions in the summons caused him to believe

18    he could simply ignore it; nor does it say what specific communications he relied on regarding the

19    summons and how those communications caused him to believe he could simply do nothing.

20    Likewise, it contains no information as to Flores' experience with other litigation and the number

21    of times, if any, he was previously sued for acts performed while employed with CDCR.  *See TCI*

22    *Grp. Life Ins. Plan*, 244 F.3d at 699 n. 6 ("we have tended to consider the defaulting party's

23    general familiarity with legal processes or consultation with lawyers at the time of the default as

24    pertinent to the determination whether the party's conduct in failing to respond to legal process

25    was deliberate, willful or in bad faith.").

26

27         [12] As noted, the procedural history here demonstrates that well before Flores was served by mail on June 22, 2011, and by personal delivery on November 3, 2011, the assigned Deputy Attorney General at the time was keenly aware of and resisted for some time plaintiff's efforts to

28    obtain and provide to the Marshal the information needed to complete service on Flores.

Nonetheless, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)). Here, plaintiff has not demonstrated that he is entitled to a default judgment. His motion for a default judgment must satisfy the standards set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). It does not.

Among other factors,[13] the court must consider the merits of plaintiff's substantive claims, the possibility of a dispute concerning the material facts, and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. The court has already granted summary judgment against plaintiff as to similar allegations and claims against the other defendants. Thus, consideration of the merits and the possibility, indeed probability, of a factual dispute as to those claims weigh strongly against a default judgment. The court has already addressed its concerns as to the excusable neglect factor, which on the current record weighs in favor of a default judgment. However, although the procedural history concerning Flores is frustrating, the primary burden to plaintiff in not obtaining a default judgment will be the burden of proving the truth of allegations in support of his claims. Flores has now generally appeared and intends to defend as to the claims against him. There is no showing that the passage of time has resulted in the loss of material witnesses or evidence or other hardship. Thus, there does not appear to be any undue prejudice to plaintiff in having to prove his claims.[14]

Finally, the court considers the strong federal policy favoring adjudication of claims on their merits. "Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v.*

---

[13] In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

[14] No evidence is presented on the sum of money at stake, but the court assumes that this factor would not weigh against plaintiff's motion.

1    *McCool*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th

2    Cir. 1985)).  Here, the court has strong reservations as to the merits of plaintiff's substantive

3    claims notwithstanding the troublesome procedural history as to Flores, and entry of a default

4    judgment would not be appropriate.  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092-93 (9th Cir. 1980)

5    ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court

6    abused its discretion in declining to enter a default judgment in favor of appellant."); *See also*

7    *Marshall v. Baggett*, 616 F.3d 849 at 852 (8th Cir. 2010); *Murdock v. Washington*, 193 F.3d 510,

8    513 (7th Cir. 1999) (district court did not abuse its discretion in denying a motion for appointment

9    of counsel or for default judgment where the "claims were of doubtful merit"); *Pinaud v. County*

10   *of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) (upholding denial of default judgment which

11   was based, in part, on the "disputable merits of [the plaintiff's] claims").

12        Although Flores has not shown excusable neglect, given that the *Eitel* factors do not

13   support entry of a default judgment and that Flores has now appeared, the court concludes that the

14   clerk's entry of default should be set aside regardless of culpability.  *Brandt v. Am. Bankers Ins.*

15   *Co.*, 653 F.3d 1108, 1111-1112 (9th Cir. 2011) (district courts have discretion to set aside default

16   even if it finds the defaulting defending acted culpably, particularly "where the defendant has a

17   meritorious defense and any prejudice can be cured.").

18        Accordingly, IT IS HEREBY RECOMMENDED that:

19        1.  Defendant Flores' motion to motion to set aside default, ECF No. 216, be denied as to

20            the grounds asserted in that motion.

21        2.  Plaintiff's motion for default judgment, ECF No. 214, be denied.

22        3.  That notwithstanding the denial of Flores' motion, and in light of the balancing of the

23            *Eitel* factors which weigh against the entry of a default judgment, the clerk's entry of

24            default as to Flores be aside.

25        4.  That Flores be ordered to file a response to the complaint within 14 days of the entry

26            of an order as to these recommendations.

27        These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

4  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

5  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6  Dated:  April 2, 2015.

7

8                                              EDMUND F. BRENNAN
                                               UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28